(120 App. Div. 29)

## BLUEMNER v. GARVIN.

(Supreme Court, Appellate Division, First Department. June 7, 1907.)

1. MASTER AND SERVANT—CONTRACT FOR SERVICES—CERTAINTY.

Defendant desired to obtain an appointment as architect for a public building, but, being unable to prepare plans acceptable to the New York municipal art commission, requested plaintiff to make a successful plan which, if he did, and defendant should get the appointment, defendant agreed to give plaintiff a fair share of his commissions. The contract did not fix the amount of the commissions nor whether they should be the gross or net commissions, nor what would constitute a fair division. Plaintiff drew plans, which were accepted, after which defendant repudiated the arrangement. *Held*, that the terms of the agreement were too vague to constitute an express contract for services.

2. WORK AND LABOR—QUANTUM MERUIT.

Where plaintiff performed services for defendant in the preparation of plans for a public building under an agreement that if the plans were accepted, plaintiff should receive a fair share of defendant's commissions as architect, which defendant subsequently refused to pay, but the arrangement for division of commissions was too indefinite for enforcement as an express contract, plaintiff was· entitled to recover the reasonable value of his services on a quantum meruit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Work and Labor, §§ 23–25.]

3. SAME—VALUE OF SERVICES—EVIDENCE—VERDICT.

Where, in an action for architect's services on a quantum meruit, the only evidence as to the value of the services was plaintiff's testimony that they were worth between $6,000 and $8,000, a verdict awarding him $9,800 was unsustainable.

4. TRIAL—CAUSES OF ACTION—SUBMISSION—THEORY OF CAUSE.

In an action for services, plaintiff alleged two causes of action—one on an express contract, and the other on a quantum meruit. At the end of the case the court denied defendant's motion to compel plaintiff to elect on which cause he would go to the jury, and then by its instructions submitted only the cause based on the express contract without any allusion to the quantum meruit. *Held* that, plaintiff not being entitled to recover on the express contract, a verdict in his favor could not be sustained, though he was entitled to recover on the quantum meruit.

Appeal from Trial Term, New York County.

Action by Oscar Bluemner against Michael J. Garvin. From a judgment on a verdict in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

Peter J. Everett (John P. Everett, of counsel), for appellant.
Joseph M. Hartfield (George H. Yeaman, on the brief), for respondent.

CLARKE, J. The complaint alleges that prior to the 13th of August, 1903, the defendant was employed by the city of New York as an architect to design and draw plans for a public building to be known as the "Bronx borough courthouse," and to submit such plans to the municipal art commission of the city of New York for approval, and, if said plans so submitted were approved by said art commission,

the contract between said city and the defendant would be confirmed, ratified, and be in full force and effect; that defendant did prepare and submit to the said commission certain sketches and plans for said building, which were rejected by said art commission, and which were declared to be improper and unfit; that on the 13th day of August, 1903, plaintiff and defendant entered into an agreement whereby, in consideration of the designing, forming, and preparing by plaintiff of plans for the said courthouse building such as would meet with the approval of the said art commission, thereby ratifying and confirming and securing to the defendant the contract of employment as architect with the city of New York, "defendant agreed to associate plaintiff with him in said undertaking as associate architect, would recognize plaintiff as the author and designer of the plans prepared by plaintiff, and would fairly share with plaintiff the commissions received by defendant on account of the contract with the said city of New York for his services as architect of said courthouse building." The complaint further alleges that the plaintiff did design, prepare, and draw certain sketches and plans for said building, which were submitted to the art commission in the name of the defendant, which were approved by said commission, and by such approval defendant thereby secured the ratification and confirmation of said contract of employment; that the plans as approved by the said art commission were entirely designed by plaintiff without any material assistance from the defendant or any one else, and plaintiff charges that the defendant was wholly unable and entirely incompetent to design said plans or any plan that would have secured the approval of the said art commission. Plaintiff further alleges that he has in all respects complied with the terms of said agreement, and has been and is now ready and willing to complete his duties as associate architect under said contract, but that the defendant on the ———— day of July, 1904, wrongfully terminated said contract, and has refused and now refuses to associate plaintiff as associate architect of the said building or to recognize him as the author and designer of the plans so prepared by plaintiff, or to pay him one-half of the commissions received by defendant or any part thereof; that the defendant will receive from the city of New York, as compensation for his services as architect of said building in commissions after deducting all expenses that will necessarily be sustained by defendant, at least the sum of $40,000; that plaintiff has been damaged by defendant's wrongful failure and refusal to comply with the terms of the said contract in at least the sum of $20,000. For a second cause of action it is alleged that between the 13th of August, 1903, and the 6th day of August, 1904, plaintiff rendered services to the defendant at his request as an architect to make plans for the erection of a public building known as the "Bronx borough courthouse," and that the services were reasonably worth the sum of $10,000, and that no part of the same has been paid except $200. That is, the first cause of action is to recover as damages for a breach of the contract the value of said contract. The second cause of action is for the reasonable value of the services rendered. Upon the trial it was established that the defendant had the preliminary contract with the city to prepare the plans for the erection of the proposed

Bronx borough courthouse; that these plans had been presented to the municipal art commission and by them rejected. Section 637 of the charter of Greater New York (chapter 466, p. 266, Laws 1901) provides that no municipal building shall be erected upon land belonging to the city unless a design of the same shall first have been submitted to and approved by the art commission of the city of New York when the mayor or the board of aldermen shall have requested the said commission to act thereon, or when the expense for such structure should exceed $1,000,000.

Such being the situation, the plaintiff testified that he met the defendant, and after a considerable talk with him, in which the defendant explained the situation he was in with the preliminary contract and with his plans presented and disapproved by the art commission, the defendant asked plaintiff to make for him a design which would pass the art commission, and that the defendant said to him:

"Bluemner, if you can make me a successful plan, I will do the best for you that a man can do. We are old friends. Here is your chance. You say you are in your own business. You are looking for opportunities, take the risk with me. It is only three months we must submit before election. I said, 'What do you mean by that you will do the best you can for me.' * * * He said, 'If we win, I give you a fair share of my commissions.' I said, 'Garvin, if I go into that, you mean to say if we lose I get nothing, and if we win I get a fair share.' He said, 'Yes.' * * * I said to him, 'It seems to me I should call myself assistant architect.' 'Well,' he said, 'you can do that. You can run your own business besides. Take your own jobs besides.' I said, 'All right, Garvin, I will do that.'"

That is the evidence offered to prove the special contract alleged in the first cause of action in the complaint.

Evidence was given tending to show that thereafter the plaintiff worked for about 10 weeks on plans and designs, the mechanical part of the work being done by other draughtsmen and employés of the defendant; that thereafter new designs and plans and a model were submitted to the art commission, which were finally approved by said commission; that thereafter the contract with the defendant, as architect of the building, was executed, fixing his compensation at 5 per cent. upon the total cost of the building, to be paid upon the completion of the drawings and specifications, 1 per cent. of the estimated cost of the work, upon the completion of the working drawings of ½ per cent. and upon the execution and closing of the contract for the work an amount, which, together with the amount already paid, should be equal to 2½ per cent. of the amount of the contract price, and the balance to be paid in progress payments at the rate of 2½ per cent. as certified to the contractor for payment by the architect and president.

The plaintiff testified that after the plans were approved he met the defendant, who said:

"Now, Bluemner, I give you now $40 a week. You stay here with me and you rush out these plans. Now, you get your ideal work, carry it out as you want it. Let's hurry with it. Work! You can call yourself the manager of the courthouse. I said to Mr. Garvin: 'Is that the way you keep your word? Is it not I who got the success of the work? Is it not I who got that courthouse back?' He said to me: 'Oh, go to Hell. I got the job now.' I said: 'Mr. Garvin, is that the way we agreed? Is that the way you promised faith

and keep it?' He said: 'If you won't take that, you won't get nothing at all.' And I said: 'All right, you will hear from me.' "

Thereafter this suit was brought; the complaint being verified on the 30th of November, 1904.

At the time of the trial, May 28, 1906, it appeared that the building had been commenced, but that it would take some five years to complete the same, and that there had been appropriated for the purposes of construction $600,000.

Before testimony had been offered, the defendant moved to dismiss the first cause of action, and at the close of the plaintiff's case renewed the motion, both of which motions were denied. At the close of the testimony the defendant moved to dismiss the complaint on the first cause of action, which being denied the defendant asked the court to direct the plaintiff to elect upon which cause of action set out in the complaint he intended to go to the jury, which motion was also denied. If the first cause of action set up an enforceable special contract, it was not error to refuse to dismiss the complaint. As the plaintiff and the court construed the first cause of action, it was to recover damages for the breach of an express contract of employment. Assuming that the jury believed the plaintiff's testimony, there was such an express contract to associate the plaintiff in the undertaking as associate architect and fairly share with the plaintiff the commissions received by the defendant on account of his contract with the city of New York, which contract the defendant breached. We are of the opinion, however, that treating the case as an action at law for the recovery of damages upon a breach of contract, the contract alleged cannot sustain the action. It is too vague and indefinite to constitute a valid contract. There is nothing in the contract which fixes the amount of the commissions to be divided, nor is there anything in its terms to define what would be a fair division of these commissions. Nor is it provided whether the commissions to be fairly divided should be the gross or the net commissions as profits after deducting therefrom the necessary expenses. The plaintiff, in his testimony, gave it as his opinion that a fair share of the commissions was one half thereof. By the terms of the contract both he and the jury were permitted to pass judgment thereon. If an agreement is so uncertain and ambiguous that the court is unable to collect from it what the parties intended, the court cannot enforce it; and, since there is no obligation, this is no contract. 9 Cyc. 248. If the offer is in any case so indefinite as to make it impossible for a court to decide just what it means and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement. Id. 249. United Press v. New York Press Company, 164 N. Y. 406, 58 N. E. 527, was an action brought to recover damages for the breach of a contract wherein the plaintiff agreed to deliver to the defendant certain news reports, and the defendant agreed to pay therefor a sum not exceeding $300 during each and every week that said news report was received. Of that contract Judge Gray said:

"It lacks support in one of its essential elements. In the absence of a statement of the price to be paid, that was a defect which was radical in its nature and which was beyond the reach of oral evidence to supply; for, if

the intention of the parties in so essential a particular cannot be ascertained from the instrument, neither the court nor the jury will be allowed to make an agreement for them upon the subject. It is elementary in the law that for the validity of a contract the promise or the agreement of the parties to it must be certain and explicit, and that their full intention may be ascertained to a reasonable degree of certainty their agreement must be neither vague nor indefinite, and, if thus defective, parole proof cannot be resorted to."

A good cause of action was, however, stated upon the quantum meruit for the services actually performed. This judgment cannot be sustained, however, as upon that cause of action for these reasons: First. There is not sufficient evidence to sustain the verdict of the jury which was for the sum of $9,800. The only testimony as to the value of the services actually rendered was the opinion of the plaintiff himself that they were worth between $6,000 and $8,000. No other witnesses testified at all upon this point. Second. The court did not submit the case to the jury upon the theory of quantum meruit. The court denied the motion made by the defendant at the end of the case to compel the plaintiff to elect upon which cause of action he would go to the jury, but the learned court in its charge itself made the election, for it charged the jury solely upon the first cause of action, saying:

"The crucial question in this case, and the one you must decide, is: Was a contract made between plaintiff and defendant such as is claimed by the plaintiff, or was it such as is claimed by the defendant? If you find that a contract was made such as the defendant has testified to, then the plaintiff cannot recover, and your verdict in that case should be for the defendant. If you find that a contract was made such as has been testified to by the plaintiff, then, before you can render a verdict in his favor, you must decide whether the sketches worked out by the plaintiff were actually accepted by the municipal art commission, and, if you find that they were, then it is for you to say what amount, as a fair share of the defendant's commissions, should be awarded to the plaintiff, and you are then to give him a verdict for that amount after deducting the sum of $200, admittedly received by the plaintiff from the defendant."

Nowhere in the charge was any allusion made to the second cause of action, nor was the value of the services actually rendered, irrespective of the contract, in any way alluded to.

The judgment and order appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.