T. B. HARMS & FRANCIS, DAY & HUNTER v. STERN et al.

(District Court, S. D. New York.   April 15, 1915.   On Rehearing, May 3, 1915.)

1. CONTRACTS ⟨⟩138—VALIDITY AT LAW—SPECIFIC PERFORMANCE.

A contract between a music publisher and a composer, which vests in the publisher the exclusive right to publish the composer's work produced within a specified period, and which binds the publisher to exert influence in the interest of the composer, so that he may receive English librettos for composition purposes, and to execute contracts for him with theatrical managers for a commission, and to pay royalties, is valid at law, though equity may not specifically enforce it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. ⟨⟩138.]

2. INJUNCTION ⟨⟩137—TEMPORARY INJUNCTION—ISSUE OF FACT.

Where an issue of fact is raised, the court will not resolve the issue in favor of the party applying for an injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 307–309; Dec. Dig. ⟨⟩137.]

On Rehearing.

3. SPECIFIC PERFORMANCE ⟨⟩25—VALIDITY OF CONTRACT—ENFORCEABILITY.

A contract may be valid, and yet not enforceable in equity.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 56–58, 60; Dec. Dig. ⟨⟩25.]

4. CONTRACTS ⟨⟩9—VALIDITY—DEFINITENESS.

A contract is not too vague to be enforceable at law so long as the acts which make up performance are expressed definitely enough so that the court can tell when the promisor has fulfilled, and when he has not, though it may be that the damages arising from failure to perform cannot be measured.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–20; Dec. Dig. ⟨⟩9.]

5. CONTRACTS ⟨⟩9—VALIDITY—DEFINITENESS.

A contract between music publishers and a composer, whereby the composer vests in the publisher the exclusive right of publication of all his works composed during a specified period, and whereby the publisher assumes the obligation of exerting his influence in the interest of the composer, so that he may receive English librettos for composition purposes, and may come in contact with the most important theatrical managers, and to execute contracts for him with theatrical managers for a commission, and to pay royalties, imposes on the publisher the duty to do his best to procure for the composer all English librettos and his works to the best managers, and, on the composer writing any music, get it before the best theatrical managers for their perusal, or, if not, to show why he cannot, and, so construed, is not void for uncertainty.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–20; Dec. Dig. ⟨⟩9.]

6. COPYRIGHTS ⟨⟩76—INFRINGEMENT—REMEDY IN EQUITY.

Where a composer vests by valid contract in music publishers the exclusive publishing rights of all his compositions for a specified period, neither he nor an assignee with notice of the contract can seek relief in equity for the publishers' infringement of copyright, on the composer and his assignee violating the right of the publishers to give them exclusive publishing rights.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 68; Dec. Dig. ⟨⟩76.]

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by T. B. Harms & Francis, Day & Hunter against Joseph W. Stern and Edward B. Marks, copartners doing business under the firm name and style of Joseph W. Stern & Co. Injunction denied.

This is an ordinary action for infringement of copyright, brought by plaintiff, a New York corporation, against defendants, music publishers in New York City, because of publication by defendants of the music of a musical composition composed by one Sigmund Romberg, entitled "Oh, Those Days." Defendants had entered into an agreement with Mr. Romberg in August, 1913, by which he vested in defendants the exclusive publishing rights for all countries of all his works and compositions which he might produce during the course of five years from the date of the contract, and by which defendants assumed the obligation to exert their influence in the interest of Mr. Romberg, in order that he might receive English librettos for composition purposes, and that he might come in contact with the most important theatrical managers, and to conduct business transactions for him, and to collect for him all production royalties due him, and to execute contracts for him with theatrical managers of all countries for a commission, and to pay him royalties. Mr. Romberg repudiated his agreement, and plaintiff claimed to be the owner of the copyright of the composition "Oh, Those Days," by assignment from Mr. Romberg, subsequent to the agreement with defendants.

Max D. Josephson, of New York City, for plaintiff.
Theodore B. Richter, of New York City, for defendants.

LEARNED HAND, District Judge. [1] The defendants' contract was valid at law, though equity would not specifically enforce its performance. Romberg could not be put in jail, if he performed his songs, or if he refused to make an assignment of his literary property; but the obligation to assign was valid, and the obligees might get a judgment for damages at law for his failure to perform. The agreement, though in words of present assignment, could not operate at once, because the subject-matter had not come into existence; but, when Romberg composed the song, it did come into existence, and was at least valid as an executory contract to assign, whether enforceable only at law or not. Furthermore, it operated as a license to the defendants to publish the song, as between themselves and Romberg, and, at least as against any one who took with notice, it was as binding as between Romberg and the defendants. I do not mean to decide how far it would operate as a license independently of such notice, because that question is not presented.

[2] Romberg's first assignee was the Wintergarden Company, and they had ample notice, before the song was composed, that there was some agreement between Romberg and the defendants. Their own agreement with the defendants they appear to have disregarded. It is true that Dreyfus, the plaintiff's president, swears that the plaintiff had no notice of the agreement; but the defendants present the most persuasive evidence to the contrary. In any case the question raises

an issue of fact, which I shall not resolve in favor of the party applying for the injunction.

Motion denied.

## On Rehearing.

This cause now comes on for reargument upon a point not originally raised; that is, whether the contract is too indefinite for recognition in a court. The plaintiff's theory is that, although, regarded formally, the contract may appear to bind the defendants to something which they need not have done, substantially it is quite impossible to say what that was, and a court must disregard it.

[3, 4] A contract may be valid, and yet the promisee not able to recover any damages, just as it may be valid, and yet not enforceable in equity. Worthington v. Beeman, 91 Fed. 232, 33 C. C. A. 475. It will not to be too vague or indefinite, so long as the acts which make up performance are expressed definitely enough, so that a court can tell when the promisor has fulfilled, and when he has not; yet it might well be that the damages arising from his failure to perform cannot be measured. United Press v. N. Y. Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288; Lambert v. Hays, 136 App. Div. 574, 121 N. Y. Supp. 80.

[5] In this case the formal undertaking of the defendants is:

"To exert their influence in all directions in the interest of Mr. Romberg, in order that Mr. Romberg may receive English librettos for composition purposes, and in order that Mr. Romberg may come into contact with the most important theatrical managers."

In return for this Romberg was to let the defendants make all his contracts for producing rights for a commission of one-third the total royalties, and was to let them publish all his music at fixed royalties. In simpler language, the bargain was that Romberg would give them rights of production and publication at the terms mentioned, if they would do their best to get him all English librettos they could and introduce his works to the best managers. Now, I see no reason why the acts making up the defendants' performance should be thought so indefinite that one could not tell when they took place and when they did not. If the defendants heard of any English libretto, I think they were bound to seek out the librettist, tell him of Romberg, and try to persuade him to let Romberg compose music on the libretto, upon such division of royalty as they might together agree. If Romberg wrote any music, I think the defendants were bound to get it before the best managers for their perusal, or, if they did not, to show why they could not. These seem to me quite explicit obligations. I think it could be ascertained with as much certainty as most other facts whether the defendants had performed them or not. How much they were worth to Romberg is another matter, and one with which I have nothing to do. He thought them of enough value to agree to give the defendant one-third of his royalties for five years and to accept the publication royalties stipulated. He knew just what he was doing, contracted in his own language, and must be held to have know his best interest.

Furthermore, one can easily see how the consideration might have been of the utmost practical value to him. The approaches to either

librettists or managers may well have been quite closed to him, and, if he had talent, he may have needed only an approach to insure his success. The event suggests as much. Whether the defendants actually exploited his necessities in such sense that the contract was unconscionable I do not understand to be raised on this motion. The sole question is whether on its face the contract is void for uncertainty. I think it is not.

The cases cited are not helpful. In some instances the question is whether the promisee has actually made any counter promise whatever, even in form. Moran v. Standard Oil Co., 211 N. Y. 187, 105 N. E. 217; Commercial Wood & Cement Co. v. Northamton P. C. Co., 115 App. Div. 388, 100 N. Y. Supp. 960, per Ingraham, J. (the majority went upon a different point); Goodyear v. Koehler Sporting Goods Co., 159 App. Div. 116, 143 N. Y. Supp. 1046; Smith v. Robson, 148 N. Y. 252, 42 N. E. 677. In other instances, the question is genuinely of the vagueness of the terms. Bluemner v. Garvin, 120 App. Div. 29, 104 N. Y. Supp. 1009; Flaherty v. Cary, 62 App. Div. 116, 70 N. Y. Supp. 951. But even in these, as in other cases interpreting language, precedents are of little value. The rule is well settled, and the difficulties of application arise from the particular language of each contract.

[6] I said in the earlier opinion that Romberg must be understood to have given the defendants a license to print copies of his songs. There is another ground for refusing him an injunction, which would not apply to an action for damages, and upon which I prefer to rest my opinion, without consideration of the question of license one way or the other. It is this: If Romberg's contract was valid at law, as I have decided, neither he nor his assignee with notice come blameless into a court of equity. The legal right upon which they base their claim in equity would, if Romberg had performed his valid obligations, now be vested in the defendants. They are violating that legal right only because he has already violated their right by failing to give them the title, and with it the right to do exactly what they are now doing. His prior wrong is the occasion of the acts of which he complains. In such circumstances, he is in no position to ask for any equitable remedy.

The motion is denied.