# THE

# MISCELLANEOUS REPORTS

OF THE

## STATE OF NEW YORK

COMMENCING APRIL 20, 1928.

---

LOUIS BOEHM, Plaintiff, *v.* UNITED POWER LAUNDRIES, INC.,
Defendant.

Supreme Court, New York County, April 20, 1928.

Attorney and client — contract of retainer — complaint alleges that
defendant breached agreement to employ plaintiff as attorney on all
legal matters affecting defendant's business — complaint defective —
contract is unenforcible — defendant had right to terminate employ-
ment at any time with or without cause.

A complaint which alleges that defendant agreed to employ plaintiff and no one
else as attorney and counsel on all legal matters affecting the business of the
defendant, and all subsidiary corporations ever owned by it, as long as plaintiff
shall own a single share of its stock and to pay him a fair and reasonable com-
pensation for all services " if, when and as rendered," and that defendant
employed some other person to perform some of such services, does not state a
cause of action, in the absence of any allegation that plaintiff has changed his
position or incurred expense or was employed under a general retainer for a
fixed period to perform legal services in relation to matters that might arise
during the period of the contract.

The contract was one to agree to enter into separate agreements of retainer, if
and as occasion therefor should arise in the future, and, as such, is unenforcible.
Furthermore, the defendant had the right to terminate the employment at any
time with or without cause.

MOTION by the defendant, under rule 106 of the Rules of Civil
Practice, to dismiss the amended complaint.

*Samuel Zeiger*, for the plaintiff.

*Edward F. Spitz*, for the defendant.

BLACK, J.   The amended complaint alleges:

That on or about January 26, 1926, an agreement in writing was
entered into between plaintiff, an attorney and counselor at law,
duly admitted to practice in the courts of the State of New York,
and the defendant, a domestic corporation.

That in and by such agreement the defendant engaged the plain-

tiff as its attorney and counsel in all legal matters affecting its affairs and business, and as the attorney and counsel of any and all laundry corporations and laundries which it may then own or subsequently acquire or whose stock it may then own or subsequently acquire, for a period of two years from and after March 1, 1926, and for such further period of time as the plaintiff shall be a stock-holder of the defendant.

That plaintiff " agreed to accept said employment."

That it was further agreed in and by said agreement that the defendant shall pay for said services a fair and reasonable compensation.

That plaintiff duly performed all of the terms of said employ-ment on his part to be performed, except in so far as performance was waived or prevented by defendant; and that plaintiff was at all times ready, willing and able to render such legal services, in accordance with the terms of said agreement.

That the defendant, upon information and belief, employed other counsel to perform legal services in matters affecting its affairs and business, and in matters affecting laundry corporations and laundries whose capital stock it owned.

That by reason of the foregoing, upon information and belief, the plaintiff was damaged in the sum of $10,000; judgment against the defendant for which sum, with interest from March 1, 1928, and costs and disbursements, is demanded by plaintiff.

It thus appears that plaintiff is suing upon an alleged agreement by the defendant to employ him and no one else as attorney and counsel on all legal matters of every kind, nature and description, affecting the business and affairs of itself and all subsidiary corpora-tions ever owned by it, so long as plaintiff should be the owner of a single share of its stock, even though such stock ownership should continue for life; and to pay him a fair and reasonable compensa-tion for each and all such services, if, when and as rendered. And for $10,000 damages because of defendant's claimed employment, prior to commencement of suit, of some other person or persons to perform some of such legal services.

It might very well be argued that the action of the defendant in engaging the present attorney in the defense of the present suit instituted against it by the plaintiff himself constitutes a further violation of such sweeping claim by him to exclusive employment.

As the present motion is based upon the amended complaint alone, I am of course unable to go outside of that to indicate the real situation of the parties. There is in the complaint no copy of the alleged agreement upon which he sues.

The action is for damages alone for alleged breach of contract

of exclusive employment of the plaintiff by the defendant. No claim is made for payment for services rendered; but simply for damages because plaintiff was not called upon to render services.

A member of the legal profession is not a day laborer or ordinary employee. On the contrary, he is an officer of the court; and as such from time immemorial has been recognized as under certain duties and obligations differing from those of ordinary employees. By the same token, his employer, the client, is likewise recognized as vested with rights or privileges respecting employment relationship not present in other cases. (*Tenney* v. *Berger*, 93 N. Y. 524; *Martin* v. *Camp*, 219 id. 170; *Matter of Dunn*, 205 id. 398; *Johnson* v. *Ravitch*, 113 App. Div. 810.)

In *Johnson* v. *Ravitch* (*supra*) the principle is stated as follows by the late Mr. Justice GAYNOR (113 App. Div. 812): " Every attorney enters into the service of his client subject to the rule that his client may dismiss or supersede him at will; and if he makes a contract for future services to his client, it is necessarily subject to such rule, and made with full knowledge that he may never perform such service, for the reason that his client may not keep him, and that in that event he will not be paid therefor, but will be entitled to compensation only for the services he has actually rendered."

The entire subject has been comprehensively considered by the Court of Appeals in *Martin* v. *Camp* (*supra*). That was an action by the assignee of a firm of attorneys to recover damages for claimed breach of contract of professional employment. The Court of Appeals unanimously held that no action for damages for breach of contract could be maintained upon the following grounds, Judge SEABURY writing for the court (219 N. Y. 173, 174): " Notwithstanding the fact that the employment of an attorney by a client is governed by the contract which the parties make, the peculiar relation of trust and confidence that such a relationship implies injects into the contract certain special and unique features. * * *

" That the client may at any time for any reason or without any reason discharge his attorney is a firmly-established rule which springs from the personal and confidential nature of the relation which such a contract of employment calls into existence. (*Matter of Dunn*, 205 N. Y. 398.) If the client has the right to terminate the relationship of attorney and client at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract. If in such a case the client can be compelled to pay damages to his attorney for the breach of the contract, the contract

under which a client employs an attorney would not differ from the ordinary contract of employment. In such a case the attorney may recover the reasonable value of the services which he has rendered but he cannot recover for damages for the breach of the contract. The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause."

The Court of Appeals in *Martin* v. *Camp* (*supra*) indicated that the principle that an attorney could not recover damages for breach of contract of employment did not apply to a case (219 N. Y. 176) " where the attorney in entering into such a contract has changed his position or incurred expense, or to a case where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract."

There is nothing, therefore, in the complaint to bring this suit within either of these exceptions.

(a) Thus there is no averment in the complaint of any change of position or incurring of expense to plaintiff's detriment. Indeed, it is difficult to conceive of any such change of position under the contract as pleaded; since that does not obligate the defendant to give plaintiff any specific amount of legal business; but only all of its business, in the event that it should have such. So that, if the defendant had been plunged into bankruptcy, or dissolved, immediately after signing the contract, plaintiff would have no claim for damages for breach thereof, even though necessarily in such case he would never have been called upon to perform any services under it. In essence, accordingly, the contract is to employ the plaintiff when, if and as an attorney is required, without any engagement that such requirement will arise.

No claim is made in this action for services already rendered or disbursements incurred in connection therewith. The necessary implication from this is that plaintiff has been paid in full for any such change of position or disbursements actually incurred in connection with work already performed. In any event, there is no claim or averment in the complaint to invoke this first exception.

(b) Respecting the second of these exceptions recognized by the Court of Appeals — " a case where an attorney is employed under a general retainer for a fixed period "— the present suit is equally clearly not within such exception. What the Court of Appeals had in mind by the expression " general retainer " appears from

the annotations to the case as reported in Lawyers' Reports Annotated (1917F, 402). That is to say, a retainer for a fixed or definitive remuneration, as well as for a fixed time. (See, also, Cordery Solicitors [3d ed.], 76.) A common instance of such a contract is a general retainer of an attorney, or firm of attorneys, by a business house to act as its counsel for a specified remuneration by the year.

However, under the instant contract as set forth in the complaint, no fixed compensation was to be paid by the defendant to the plaintiff, but only " a fair and reasonable compensation." (¶ 5.) In other words, the price to be paid for each and all services was necessarily to be agreed upon between plaintiff and defendant as plaintiff should be respectively requested to perform it or them; or, failing such agreement, plaintiff was to receive a fair and reasonable compensation. In effect, this was merely a contract to agree to enter into separate agreements of retainer if and as occasion therefor should arise in the future.

Nor does this case come within the further qualification of the Court of Appeals, that the general retainer may be " for a fixed period," in order to constitute an exception to the principle relied on. Here there is no fixed time or duration of the contract; or in any event, no such time as the law and public policy will tolerate. Under the agreement as pleaded the defendant is required to employ plaintiff so long " as the plaintiff shall be a stockholder of the defendant." (¶ 3.) Thus, if plaintiff should become the owner of but one share of its stock and continue to hold such share for the remainder of his life, defendant would be under the obligation to employ him, and no one else, on all of its legal business and affairs. This provision is so vague and indefinite in duration as clearly not to be within the purview of the expression " a fixed period," as so used by the Court of Appeals.

Accordingly, the contract as pleaded in the instant complaint is not within these exceptions mentioned by the Court of Appeals, but instead falls within the general rule enunciated in *Tenney* v. *Berger* and other cases (*supra*) giving to the defendant the right to terminate the employment at any time, with or without cause — as appears from the facts and holding in *Price* v. *Western Loan & Savings Co.* (35 Utah, 379). In that case an attorney was employed at a salary of $100 a month " commencing with the 1st of May, 1904, and to continue so long as my services are as satisfactory as they have been in the past two years." He agreed to render all such legal services which might be required by the defendant loan association during such engagement. Respecting this retainer, which is strikingly similar in many respects to that set forth in this action, the court said (35 Utah, 388): " Furthermore, the law holds the

relationship of attorney and client to be one of reliance, trust, and confidence  *   *   *.  ' That the client has the right to discharge his attorney at any time without cause  *   *   *  cannot well be doubted.'  (Mechem on Agency, 856; *Tenney* v. *Berger*, 93 N. Y. 524.) "

The only provision respecting compensation contained in the amended complaint is as follows: " 5th. That it was further agreed in and by said agreement that the defendant shall pay for said services a fair and reasonable compensation."  Obviously, what this imports and all that it imports is that as defendant might require any particular task to be performed by plaintiff, it would agree with him as to what would constitute " a fair and reasonable compensation " for such services.  Each agreement would constitute a separate undertaking.  So that in practical effect the agreement sued upon is nothing more or less than a claimed undertaking that the parties should agree as to the compensation for each particular piece of legal work, when and as undertaken by the plaintiff.  Such a contract is unenforcible.  (*Varney* v. *Ditmars*, 217 N. Y. 223; *St. Regis Paper Co.* v. *Hubbs & Hastings P. Co.*, 235 id. 30; *Bluemner* v. *Garvin*, 120 App. Div. 29; *Canet* v. *Smith*, 173 id. 241.)

As said by the unanimous Court of Appeals, per Pound, J., in the *St. Regis Paper Co. Case* (*supra*) respecting an agreement for the sale of paper over a period of years, at a price " to be fixed by mutual consent "— substantially as herein — (235 N. Y. 36): " But one element of the contracts was left open to further negotiations.  Prices were to be fixed by mutual agreement and if the parties did not agree, the contracts were to terminate.  These terms are so indefinite as to have no legal significance; they amount to nothing more than an agreement to make a future agreement; an agreement to agree is not enforcible.  Plaintiff exercised its legal right in refusing to be bound thereby.  (*United Press* v. *N. Y. Press Co., Ltd.*, 164 N. Y. 406, 413; *Varney* v. *Ditmars*, 217 N. Y. 223.) "

So in *Varney* v. *Ditmars* (*supra*), Chase, J., writing for the Court of Appeals respecting an agreement to employ plaintiff at " a fair share " of profits, said (217 N. Y. 228): "A fair share of the defendant's profits may be any amount from a nominal sum to a material part according to the particular views of the person whose guess is considered.  Such an executory contract must rest for performance upon the honor and good faith of the parties making it.  The courts cannot aid parties in such a case when they are unable or unwilling to agree upon the terms of their own proposed contract."

Again, in *Bluemner* v. *Garvin* (*supra*) the Appellate Division,

First Department, by CLARKE, J., said respecting a similar agreement to pay the plaintiff a fair division of commissions received (120 App. Div. 34): " If an agreement is so uncertain and ambiguous that the court is unable to collect from it what the parties intended the court cannot enforce it, and since there is no obligation there is no contract. (9 Cyc. 248.) If the offer is in any case so indefinite as to make it impossible for a court to decide just what it means and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforcible agreement."

The Appellate Division in *Canet* v. *Smith (supra)* likewise said respecting an agreement to pay the plaintiff " a reasonable amount " of profits to be realized, per SMITH, J. (173 App. Div. 243): " The plaintiff here has recovered upon a contract so vague that the minds of the parties could not have met thereupon     *   *   *."

The employment, being indefinite as to time, is a hiring at will. In *Watson* v. *Gugino* (204 N. Y. 535) VANN, J., writing for the unanimous Court of Appeals, said (at p. 541): " In this State the rule is settled that unless a definite period of service is specified in the contract, the hiring is at will and the master has the right to discharge and the servant to leave at any time."

In the instant case, as seen, so long as plaintiff remains the owner of a single share of defendant's stock, it must engage him for all of its legal business. There is no averment in the complaint that plaintiff is obligated to remain a stockholder for any specified period of time; nor that he may not sell his stock any time he so elects. Yet if he persists in remaining a stockholder, the defendant is bound.

Regarding such an agreement, HIRSCHBERG, J., speaking for the unanimous Appellate Division, Second Department, in *Outerbridge* v. *Campbell* (87 App. Div. 597) said (at p. 600): " He [the plaintiff] was certainly at liberty to cease representing his principals whenever he deemed it for his interest so to do, and a like privilege must be regarded as belonging to the employers."

So in *Price* v. *Western Loan & Savings Co. (supra)* the court said (35 Utah, 386): " We think it will be conceded that under the terms of the contract respondent was not bound to continue in the service of appellant for any definite length of time; that is, he could terminate the contract at will.     *   *   *   As hereinbefore observed, the contract, neither expressly nor impliedly, bound him to act as appellant's attorney for any specified period of time. Therefore it lacked the essential element of mutuality of obligation and was terminable at will by either party."

The plaintiff, in his memorandum, places his entire reliance on *Greenberg* v. *Remick & Co.* (230 N. Y. 70). The carefully considered

language of Judge CHASE, writing for the Court of Appeals in that case, however, very plainly sustains defendant's right to judgment on this motion.

In that case the contract before the court was an ordinary business agreement of a regular master and servant character, whereby the defendant " employed the plaintiff as its attorney and legal adviser for a period of one year   *   *   *   at a compensation of $5,200 for a year, payable $100 weekly." (Pp. 71, 75.)   Respecting this, it will be noted:

1. The use of the very term " employed " indicates that the parties considered that an ordinary master and servant arrangement or employment, in any event, was to be entered into.

2. A fixed yearly compensation was provided for, namely, $5,200.

3. This was payable $100 weekly, just like an ordinary salary.

4. Most important of all, the words characterizing the nature of the services to be rendered — as " attorney and legal adviser "— are treated by the court itself as simply indicating that consultative or other general services were contemplated, and not services in connection with the conduct of litigation at all.

Regarding the foregoing, the court expressly says (at p. 75): " The contract was not that the attorney should conduct a particular suit or proceeding.   It does not appear that it was entered into in anticipation of expected litigation.   It does not even appear that the defendant during the term had any contentious matter, litigated or otherwise, requiring the advice or services of an attorney at law.   The contract did not, therefore, at once and in and of itself establish a professional relation in a matter in controversy. By the terms of the contract the attorney was to receive a specified salary for a designated term, and although it provided for professional advice and service it was in every respect more in the nature of an ordinary contract between master and servant than one for professional employment.   It did not differ from contracts with other salaried employees except in the character of the work to be performed.   It was not such an employment as would sustain a lien on the master's property for the attorney's services.   (*Matter of Heinsheimer*, 214 N. Y. 361.)   In such a contract for such a purpose the reason for holding an implied provision permitting the cancellation of the contract by the employer without being liable for breach of contract, does not seem to exist.   The distinction between the contract of *Martin* v. *Camp* and the one now before us is in the fact that the one is purely for professional services, speculative in its outcome and for the reasons mentioned presumed to be entered into in view of the inferences as therein stated; while the other is an ordinary business agreement specific and definite

in its terms and in effect negatives the presumption that as to the client it should be deemed a contract at will."

Thus, the court in recognizing as it does (also at p. 75) that the issue is "whether the particular contract between the parties as stated in the complaint includes an implied condition or provision that the plaintiff could be discharged by the defendant prior to the end of the term without being liable to the plaintiff for a breach of the contract," sustains our position.

In resolving this question in favor of the plaintiff in that suit, it clearly relies on the points mentioned. One of the most important of these was the provision for the fixed yearly salary payable in equal installments of $100 weekly. Not alone would this provision render readily ascertainable the measure of damages, but it also placed the agreement on the plane, as expressly stated by the court, " of an ordinary contract between master and servant." (P. 75.)

One of the chief reasons in support of the instant application is that there is absolutely nothing indicated by the complaint as a measure of damages in the event that the case should proceed to trial. Plaintiff alleges " that the defendant shall pay for said services a fair and reasonable compensation." (¶ 5.) What possible basis can be taken for such " fair and reasonable compensation " in a case where the gravamen of plaintiff's alleged cause of action is that he was never called upon to render any services at all. Certainly, plaintiff cannot claim the fair and reasonable value of his own services, since he has not rendered them. Nor would the fair and reasonable value of the services of another attorney afford any legal measure of such value of plaintiff's services, since the attorneys may be of totally different calibre; and also, one attorney might render the work in an entirely different manner from the other; and further, and most important of all, as said by the Court of Appeals in *Randall* v. *Packard* (142 N. Y. 47, 55, 56): " The result of a lawyer's services is an element in determining their value and it is, unquestionably, a very important one." There-fore, since it can never be said that the results achieved by other attorneys are precisely identical with those which would have been achieved by plaintiff, necessarily the fair and reasonable value of such other services could not be properly considered as the fair and reasonable value of those which would have been rendered by plaintiff, so that there is nothing in the agreement as pleaded to afford a court or jury any legal basis of ascertaining plaintiff's damage in this case.

In *Greenberg* v. *Remick & Co.* (*supra*) the Court of Appeals further indicates that an equally important ground of its decision was that it did not even appear that the defendant " had any contentious

matter, litigated or otherwise, requiring the advice or services of an attorney at law." Accordingly, that it did not appear that the contract "was entered into in anticipation of expected litigation." Had this element not been presented, the opinion clearly indicates that the court would have held the contract within the rule of *Martin* v. *Camp*.

In the instant case there is no such inference as was drawn in *Greenberg* v. *Remick & Co.* As indicated above, the contract may even run for plaintiff's life, should he elect to become and remain a stockholder for that period. The defendant's very name indicates that it is a merger of companies engaged in the laundry business, and paragraph 3 of the complaint further emphasizes that situation by claiming that plaintiff was to be employed " as the attorney and counsel of any and all laundry corporations and laundries which it may then own or subsequently acquire." It is difficult to conceive of any business necessitating more frequent and even petty litigation than such a combination of laundries.

A further reference in paragraph 3 of the complaint to the defendant corporation as a going and growing concern, expected to acquire laundries or their stock, also indicates the imminent likelihood of litigation in connection with such operations.

So that instead of the situation presented to the court in the *Greenberg* case, of an agreement not entered into " in anticipation of expected litigation," in the present case we have an agreement the description of which in the complaint fairly indicates that long and involved services in connection with actual litigation were contemplated. Plaintiff expressly pleads that defendant agreed to employ him on "*all* legal matters." (¶ 3.) This difference is fundamental and vital. All of the reasons for the rule enunciated in *Martin* v. *Camp*, that in the interests of justice and as a matter of public policy a client may always change his attorney during the progress of litigation, must apply *a fortiori* to an arrangement contemplating not merely one litigation, but a series of many litigations extending over a period of many years.

I do not think, therefore, that the case of *Greenberg* v. *Remick & Co.* (*supra*) is authority for plaintiff's contention that his complaint states a cause of action. For the reasons heretofore stated the motion of the defendant to dismiss the complaint under rule 106 of the Rules of Civil Practice is granted, with ten dollars costs. Settle order.