STATE of Utah, Plaintiff and Respondent,

v.

**Patrick Dean COANDO, Defendant and Appellant.**

No. 880546–CA.

Court of Appeals of Utah.

Dec. 15, 1989.

---

Dixon D. Hindley, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Sandra Sjogren, Salt Lake City, for plaintiff and respondent.

## OPINION

Before BENCH, GREENWOOD and CROFT,[1] JJ.

GREENWOOD, Judge:

Defendant Patrick Dean Coando appeals his conviction of issuing bad checks, a third degree felony, in violation of Utah Code Ann. § 76-6-505 (Supp.1989). Defendant urges reversal of his conviction, claiming that the State lacks jurisdiction. We affirm.

On October 26, 1987, defendant was charged in Roosevelt, Duchesne County, Utah, with the crime of issuing bad checks. The bad checks for which defendant was charged included a check for $165 to Safeway, checks for $29.26 and $20 to Tri-Mart, checks for $50 and $20 to Triangle Oil, and checks for $50 and $20 to Vernal Drug, for a total of $354.26. Safeway, Tri-Mart, and Triangle Oil are in Roosevelt. Vernal Drug and the Vernal branch of First Interstate Bank of Utah (First Interstate), the drawee of each bad check, are in Vernal, Uintah County.

Defendant pleaded guilty to the charges and entered into an abeyance agreement, which required him to make restitution payments and refrain from similar legal violations. On April 25, 1988, the district court in Duchesne County, having found that defendant had violated the abeyance agreement, set aside the plea in abeyance and entered judgment on the guilty plea. Defendant moved to dismiss for lack of jurisdiction at an order to show cause hearing, on grounds that he was an enrolled tribal member of the Uintah and Wind River Reservations and that the offenses were committed on the Uintah–Ouray Reservations. The court denied defendant's motion, finding that he was not an enrolled member of the Uintah and Ouray Reservations and that all the checks issued by defendant were drawn on First Interstate Bank of Utah, Vernal branch, which is not within an Indian reservation.

On appeal, defendant claims that the State lacks jurisdiction because he is an Indian and all but two of the bad checks were passed in Roosevelt, which is in Indian country and not subject to state jurisdiction. *See Ute Indian Tribe v. State of Utah,* 521 F.Supp. 1072, 1188 (D.Utah 1981), *aff'd in part, rev'd in part,* 716 F.2d 1298 (10th Cir.1983), *reh'g* 773 F.2d 1087 (10th Cir.1985), *cert. denied,* 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986). Defendant concedes that the State has jurisdiction to prosecute for the two checks totaling $70 written to Vernal Drug, in Uintah County. He contends, as a result, that the State may charge him with a class B misdemeanor only, and not a third degree felony because the amount involved is less than $200. *See* Utah Code Ann. § 76-6-505(3)(a) (Supp.1989).

The State argues that notwithstanding the *Ute Indian Tribe* decision, Roosevelt is not in Indian country and further, that defendant did not sufficiently establish his membership in an Indian tribe. In addition, the State argues that nonpayment by the drawee bank is an essential element of the bad check offense thus giving the State jurisdiction over all offenses involving checks drawn on banks located within the state and undisputedly not within Indian

---

1. Bryant H. Croft, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

country. We address this second argument first, and find it dispositive.

## ESSENTIAL ELEMENT

▉ The State argues that First Interstate's refusing payment of the checks defendant issued is an essential element of the bad check offense and because the refusal occurred outside Indian country, the State may assert proper jurisdiction over all the bad check charges arising from checks drawn on First Interstate. We agree. Utah Code Ann. § 76–1–201 (1978) states in pertinent part:

(1) A person is subject to prosecution in this state for an offense which he commits, while either within or outside the state, by his own conduct or that of another for which he is legally accountable, if:

(a) the offense is committed either wholly or partly within the state;

. . . .

(2) An offense is committed partly within this state if either the conduct which is an element of the offense, or the result which is such an element, occurs within this state.

Under section 76–1–201, if conduct or a result of conduct constituting any element of the offense occurs within the state, the State has jurisdiction to prosecute the offense.

Utah Code Ann. § 76–6–505(1) (Supp. 1989) defines the elements of the crime of issuing a bad check or draft as follows:

Any person who issues or passes a check or draft for the payment of money, for the purpose of obtaining from any person, firm, partnership, or corporation, any money, property, or other thing of value or paying for any services, wages, salary, labor, or rent, knowing it will not be paid by the drawee *and payment is refused by the drawee*, is guilty of issuing a bad check or draft.

(Emphasis added.) [2]

When construing statutory language, we assume that all words and terms are used advisedly and interpret terms in accordance with their commonly accepted meaning. *Pate v. Marathon Steel Co.*, 777 P.2d 428, 430 (Utah 1989); *Hector Inc. v. United Sav. & Loan Ass'n*, 741 P.2d 542, 546 (Utah 1987); *Grant v. Utah State Land Bd.*, 26 Utah 2d 100, 485 P.2d 1035, 1036 (1971); *Gleave v. Denver & Rio Grande W. R.R. Co.*, 749 P.2d 660, 672 (Utah Ct.App. 1988). The language of section 76–6–505 unambiguously provides that the drawee's refusal to pay is an essential element of the offense since the provision is written in the conjunctive and requires refusal of payment for the offense to be complete. The Colorado Supreme Court considered similar language in Colorado's former bad check statute and found that refusal to pay was an element of the crime. *People v. Quinn*, 190 Colo. 534, 549 P.2d 1332, 1334–35 (1976) (en banc).[3] *See also State v. Green*, 672 P.2d 400, 403 (Utah 1983) (Hall, C.J., dissenting) (the essential elements of the bad check offense include refusal of payment by the drawee). If the drawee bank does not refuse to pay, the crime has not been committed. *See Riggs v. State*, 34 Md.App. 324, 367 A.2d 22, 26 (1976) (relying on the principle that every element of a crime must be proved, the court reversed judgment where the State did not establish that the statutorily required element that the

---

**2.** Prior to enactment of section 76–6–505 in 1973, passing checks without sufficient funds was governed by Utah Code Ann. § 76–20–11 (1953). Under section 76–20–11, refusal of payment was not an element of the crime, but instead served only as admissible proof of presentment and presumptive evidence of insufficiency of funds.

**3.** In *Quinn* and in *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826, 831 (Colo.1972) (en banc), the Colorado court found that the provision of Colorado's bad check statute which required dishonor by the drawee bank violated constitutional

due process and equal protection of the laws because it allowed a third party complete discretion to determine criminal liability by either paying or dishonoring checks. Defendant has not challenged the constitutionality of the Utah statute either at trial or on appeal. We, therefore, will not address the issue sua sponte. *See* 16 C.J.S. *Constitutional Law* § 92 (1984); *cf. State in Re N.H.B.*, 777 P.2d 487 (Utah Ct.App. 1989) (a court will consider a constitutional issue raised for the first time on appeal if a liberty interest is at stake).

same check which defendant used to obtain money be dishonored upon presentment).

 Defendant argues that refusal by the drawee to pay is merely a condition confirming that the offender had the requisite culpable intent[4] or knowledge when he issued the check and not an essential element of the crime. Defendant claims that the statute is a codification of common law fraud and, consequently, since the *corpus delicti* of the offense is the conduct of passing the check for value with the intent to defraud, the essential elements of the crime are restricted to the *mens rea* and *actus reus* of the perpetrator. We note, however, that Utah Code Ann. § 76–1–105 (1978) provides that "Common law crimes are abolished and no conduct is a crime unless made so by this code, other applicable statute or ordinance." In essence, defendant asks the court to limit the dishonor requirement to a statutorily established presumption or prima facie case. Some jurisdictions have done so, but their statutory language is clearly different than Utah's. *See e.g., Tolbert v. State,* 294 Ala. 738, 321 So.2d 227, 230–31 (1975); *State v. Haremza,* 213 Kan. 201, 515 P.2d 1217, 1224 (1973). Further, defendant offers no support for his contention that the essential elements of the offense are limited to the *mens rea* or *actus reus* of the perpetrator or his assertion that the statute is merely a codification of common law fraud. In determining the essential elements of the bad check offense, we must follow section 76–6–505's unambiguous language rather than the requisites of common law fraud. We, therefore, hold that because the drawee's refusing payment is an essential element of the crime of issuing a bad check and that element occurred in this case within the state, the State had proper jurisdiction to prosecute defendant for all bad checks written on First Interstate.

Our holding precludes the necessity of determining whether Roosevelt, Utah, is part of federally recognized Indian country, and whether defendant sufficiently es-

tablished his membership in an Indian tribe.

Affirmed.

BENCH and CROFT, JJ., concur.

---

4. Intent to defraud is not a necessary element of the bad check offense under section 76–5–505 as now written. *State v. Delmotte,* 665 P.2d 1314, 1315 (Utah 1983).