1999 UT App 060

STATE of Utah, Plaintiff and Appellant,

v.

Louis A. AMOROSO;  and Beer Across
America, an Illinois corporation,
Defendants and Appellees.

No. 971712–CA.

Court of Appeals of Utah.

March 4, 1999.

Jan Graham, Attorney General, J. Frederic Voros Jr., Wayne Klein, and Carol Clawson, Assistant Attorneys General, Salt Lake City, for Appellant.

Joseph E. Tesch, David B. Thompson, Tesch Thompson & Fay, Park City, and Morton Siegel, Siegel Moses Schoenstadt & Webster PC, Chicago, Illinois, for Appellees.

Before WILKINS, P.J, GREENWOOD, Associate P.J., and BILLINGS, J.

## OPINION

BILLINGS, Judge:

¶1 Appellant, the State of Utah, appeals an order dismissing a criminal prosecution against Appellees Louis A. Amoroso and Beer Across America (BAA) involving several violations of Utah liquor laws.[1] We reverse and remand.

## FACTS

¶2 BAA is a national marketer of several products, including "heavy" beer, which qualifies as "liquor" under Utah liquor laws. BAA is located in Illinois. It has no property in Utah, maintains no representatives here, nor does it directly solicit sales in Utah. However, BAA advertises nationally, including in Utah, via the Internet and newsletters.

¶3 BAA's customers purchase BAA products by mail, telephone 800 number, or the Internet. All orders must be prepaid by the purchaser, including freight and handling charges, before any purchases are delivered to the shipper. The purchases are then delivered to a shipper in Illinois "freight paid" for delivery to the customer in accordance with the customer's instructions. BAA collects and pays sales tax to Illinois on all purchases. Since 1992, BAA has shipped alcoholic beverages to several hundred Utah customers.

¶4 BAA was charged with the following criminal violations:

Count I: Unlawful importation of alcoholic product, a class B misdemeanor, in violation of Utah Code Ann. § 32A–12–503 (1994);

Count II: Unlawful sale or supply of alcoholic beverage or product, a class B misdemeanor, in violation of Utah Code Ann. § 32A–12–201 (1994);

Count III: Unlawful warehousing, distribution, and transportation of liquor, a class B misdemeanor, in violation of Utah Code Ann. § 32A–9–101(2) (1994);

Count IV: Unlawful sale or supply of alcoholic beverage to minors, a class A misdemeanor, in violation of Utah Code Ann. § 32A–12–203 (Supp.1996);

Count V: Pattern of unlawful activity, a second degree felony, in violation of Utah Code Ann. § 76–10–1601 and § 76–10–1603.5 (1995) et seq.

¶5 On June 11, 1997, BAA filed Motions to Dismiss the charges. The trial court dismissed counts I, II, III, and V for lack of jurisdiction. Additionally, the court concluded that prosecuting BAA would violate the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 3. Although the trial court did not dismiss count IV, the State voluntarily dismissed this count without prejudice. This appeal followed.

## ANALYSIS

¶6 "[T]he propriety of a trial court's decision to grant or deny a motion to dismiss is a question of law that we review for correctness." *Tiede v. State*, 915 P.2d 500, 502 (Utah 1996). Further, both parties agree this case presents solely legal issues.[2] Thus,

---

1. The case was prosecuted below as two separate but parallel proceedings. Beer Across America, Inc. (BAA) is an Illinois Corporation and Louis A. Amoroso is its president and a shareholder. However, on appeal, appellees have been joined, and we therefore refer to them jointly as "Beer Across America" (BAA).

2. BAA asserted in its reply to the State's Motion in Opposition to Motion to Dismiss that its motion "states only points of law, supported by undisputed facts:"

Any facts supporting these arguments are uncontested by the parties. In these motions, the Defendants rely on factual support only upon

we accept the facts as alleged in the informations and the affidavits in support thereof, and view these facts in a light favorable to the State, reviewing the trial court's determinations for correctness. *See Hebertson v. Willowcreek Plaza,* 923 P.2d 1389, 1390 (Utah 1996) (citation omitted).

### I. *Preservation of Issues*

¶ 7 As a threshold matter, BAA asserts the State makes several arguments on appeal that it failed to raise below. As a general rule, appellate courts will not consider an issue raised for the first time on appeal. *See Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 455 (Utah 1993). Further, as in the case before us, when legal issues and theories are in dispute, proper preservation requires that the parties "bring the issue to the attention of the trial court, thus providing the court an opportunity to rule on the issue's merits." *Ohline Corp. v. Granite Mill,* 849 P.2d 602, 604 n. 1 (Utah Ct.App.1993) (citations omitted). Finally, issues raised for the first time on appeal will be addressed only if the trial court proceedings demonstrated "plain error." *State v. Olsen,* 860 P.2d 332, 333 (Utah 1993). To establish plain error, the State must show "(i)[a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

¶ 8 With these principles in mind, and after carefully reviewing the record, we conclude that all the issues considered in this appeal are properly preserved as they were

the pleadings (Information and Probable Cause Statement) and the discovery provided by the State.... Hence, Defendants' entire Motion is "limited to legal issues that can be decided on the pleadings...."

3. We conclude the court's failure to assert personal criminal jurisdiction over defendants based on their presence in Utah was plain error, as was the court's failure to utilize the Utah Alcoholic Beverage Control Act's (ABCA) definition of "sale."

4. The magistrate's ruling was based on *United States v. Nippon Paper Indus. Co.,* 109 F.3d 1 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct.

raised below, or constitute plain error. *See Dunn,* 850 P.2d at 1208–09.[3]

¶ 9 Underlying our decision to reach the merits of this appeal is the fact that the identical legal issues posed in this appeal will most likely appear before us again. Below, the magistrate dismissed the prosecution's case without prejudice. Accordingly, under the Utah Rules of Criminal Procedure, the State may refile charges against BAA. *See* Utah R.Crim. P. 25(d). Thus, if we affirm, the State will refile, BAA will once again claim lack of jurisdiction, and the State will re-advance the arguments BAA now argues were waived. Where, as here, dispositive issues are likely to arise later in the course of a judicial proceeding, we are more inclined to reach the merits "in the interest of judicial economy and providing guidance to the parties and the trial court...." *State v. Fisk,* 966 P.2d 860, 861 (Utah Ct.App.1998). Having concluded the issues presented in this appeal are properly before us, we turn to the merits.

### II. *Jurisdiction*

#### A. Personal Jurisdiction

¶ 10 The State argues the court erred in applying principles of civil personal jurisdiction in a criminal case. In opposition, BAA argues that "principles of fundamental fairness" dictate that a "minimum contacts" analysis is appropriate where, as here, Utah is seeking to assert criminal jurisdiction over a foreign corporate defendant, even if that defendant is present in a Utah court.[4] We agree with the State.

685, 139 L.Ed.2d 632 (1998). In *Nippon Paper,* the First Circuit held that "activities committed abroad which have a substantial effect within the United States may form the basis for a criminal prosecution [in this country]." 109 F.3d at 3 n. 2. *Nippon Paper* does not support the rule the magistrate extrapolated, or the principle that BAA would have us apply: that civil "minimum contacts" principles must be satisfied in criminal cases if the government could have proceeded civilly. Instead, *Nippon Paper* merely holds *statutory words* that "clearly evince Congress' intent to apply the *Sherman Act* extraterritorially in civil actions" had not "lost their clarity simply because this is a criminal proceeding." *Id.* at 6 (emphasis added).

¶ 11 The rule is well-settled that civil "minimum contacts" analysis has no place in determining whether a state may assert criminal personal jurisdiction over a foreign defendant. *See, e.g., Boyd v. Meachum,* 77 F.3d 60, 66 (2d Cir.1996) (federal constitutional requirements of civil personal jurisdiction do not apply in a criminal case); *State v. McCormick,* 273 N.W.2d 624, 628 (Minn. 1978) (criminal cases "not subject to the same flexibility enjoyed by the more elastic rules governing extraterritorial jurisdiction in civil cases"); *State v. Taylor,* 838 S.W.2d 895, 897 (Tex.App.1992) (citing *Ex parte Boetscher,* 812 S.W.2d 600, 602 (Tex.Crim. App.1991) ("A 'minimum contacts' analysis is not applicable to establish jurisdiction in criminal prosecutions.")); *Rios v. State,* 733 P.2d 242, 244 (Wyo.1987) ("the concept of minimum contacts ... has no application to criminal cases").

¶ 12 We conclude the trial court erred in applying a civil minimum contacts analysis in this criminal prosecution. BAA, by way of Louis Amoroso, was physically present at the proceedings below.[5] Thus, the trial court erred when it failed to assert criminal personal jurisdiction over BAA.

### B. Subject Matter Jurisdiction

¶ 13 The State argues BAA is subject to prosecution in Utah because its "conduct [in Illinois] caused an unlawful result within this state," and thus BAA committed the charged offenses partly within Utah. In opposition, BAA, by way of a tortured reading of section 76–1–201, argues the State improperly relies solely on a "result" test.

¶ 14 Utah's Criminal Jurisdiction Statute provides

(1) A person is subject to prosecution in this state for an offense which he commits, while either within or outside the state, by his own conduct or that of another for which he is legally accountable, if:

(a) the offense is committed either wholly or partly within the state;

. . . .

(2) An offense is committed partly within this state if either the conduct which is any element of the offense, or the result which is such an element, occurs within this state.

Utah Code Ann. § 76–1–201(1)-(2) (Supp. 1998).

¶ 15 As early as 1911, the United States Supreme Court implicitly endorsed the State's interpretation of the statute. *Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), supports the proposition that Utah may apply its criminal statute to conduct occurring entirely outside its borders. In *Strassheim,* the Supreme Court held that Michigan could prosecute a defendant charged with defrauding the Michigan state government even though the defendant committed the fraudulent acts entirely outside of Michigan and never entered Michigan until the fraud was complete. *See id.* at 281–83, 31 S.Ct. at 559.

¶ 16 This principle of extraterritoriality is codified in Utah Code Ann. § 76–1–201 (Supp.1998). Under this statute, if conduct or a result of conduct constituting any element of the offense occurs within the state, the State has jurisdiction to prosecute the offense. *See State v. Sorenson,* 758 P.2d 466, 470 (Utah Ct.App.1988). In *Sorenson,* an issue raised was whether Utah had jurisdiction arising from a charge of possession of alcohol pursuant to Utah Code Ann. § 32A–12–13(1) (1986), which prohibited the purchase, possession, or consumption of alcohol by a person under the age of 21. *Id.* at 467. Sorenson was stopped for speeding in St. George, Utah, but a search of his car revealed he was not in possession of any alcohol. *Id.* We noted that "Sorenson's conviction of the offense of consumption necessarily requires proof of the jurisdictional factor that at least some alcohol was consumed in Utah." *Id.* at 470 (citing Utah Code Ann. § 76–1–201

---

5. While BAA did characterize its initial appearance as a "special appearance" to contest jurisdiction, this does not affect whether Utah can assert personal jurisdiction in this criminal case. BAA seems to accept this as it does not make this distinction on appeal. *See* I Charles E. Torcia,

*Wharton's Criminal Law* § 14 at 83–84 (14th Ed.1978); *United States v. Lussier,* 929 F.2d 25, 26 (1st Cir.1991) (per curiam) ("It is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained.").

(1978)). *See also State v. Coando,* 784 P.2d 1228 (Utah Ct.App.1989), *cert. granted* 795 P.2d 1138 (Utah 1990), *aff'd on other grounds,* 858 P.2d 926 (Utah 1992).

¶ 17 BAA is subject to prosecution in Utah for conduct committed in Illinois because its conduct caused an unlawful result in Utah. In sum, the information alleges conduct that resulted in unlawful importation of alcohol into Utah; unlawful sale or supply of alcohol in Utah; [6] unlawful warehousing, distribution, or transportation of alcohol to Utah; unlawful supplying of alcohol to persons within Utah; and unlawful distribution or transportation for sale or resale to retail customers within Utah without a license.

¶ 18 Accordingly, the trial court erred when it concluded that Utah could not assert subject matter jurisdiction over BAA.

### III. *Commerce Clause*

¶ 19 The trial court concluded, and BAA asserts on appeal, that even if Utah has jurisdiction over BAA, this prosecution runs afoul of the Commerce Clause, and is therefore unconstitutional. The State argues that under the Twenty–First Amendment, this prosecution is proper and is not barred by the Commerce Clause.[7]

¶ 20 "Constitutional interpretation is a question of law which we review for correctness, giving no deference to the trial court's conclusion." *State v. Davis,* 903 P.2d 940, 943 (Utah Ct.App.1995) (citing *State v. Contrel,* 886 P.2d 107, 111 (Utah Ct.App.1994)).

¶ 21 The State relies on Section Two of the Twenty–First Amendment: "The *transportation* or *importation* into any State, Territory, or possession of the United States for *delivery* or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI § 2, (emphasis added). Historically, the

Twenty–First Amendment "subordinat[ed Congress'] rights under the Commerce Clause to the power of a State to control, and to control effectively, the traffic in liquor within its borders." *United States v. Frankfort Distilleries, Inc.,* 324 U.S. 293, 300, 65 S.Ct. 661, 665, 89 L.Ed. 951 (1945) (Frankfurter, J., concurring). Thus, States were "freed from the restrictions upon state power which the Commerce Clause implies as to ordinary articles of commerce." *Id.*

¶ 22 A review of more recent Supreme Court case law dealing with the interaction between the Twenty–First Amendment and the Commerce Clause is helpful. In *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964), the New York State Liquor Authority claimed authority to prohibit an arrangement whereby defendant sold liquor to international airline travelers in a New York airport. *Id.* at 325, 84 S.Ct. at 1294. The customers collected the purchased liquor only after their flights (on which the liquor purchases also traveled) touched down in a foreign city. The issue before the Court was "whether the Twenty–First Amendment so far obliterates the Commerce Clause as to empower New York to prohibit absolutely the passage of liquor through its territory, under the supervision of the United States Bureau of Customs acting under federal law, for delivery to consumers in foreign countries." *Id.* at 329, 84 S.Ct. at 1296.

¶ 23 The Court held New York exceeded its authority, writing *"[h]ere, ultimate delivery and use is not in New York, but in a foreign country.... [T]his case does not involve measures aimed at preventing unlawful diversion or use of alcoholic beverages within New York."* *Id.* at 333–34, 84 S.Ct. at 1299 (emphasis added) (internal quotations omitted). Thus, since New York was at-

---

**6.** The proper definition for "sale" in this case is not the UCC definition (as the magistrate erroneously concluded), but the Utah Alcoholic Beverage Control Act (ABCA) definition. The ABCA broadly defines "sale" to include "any transaction ... whereby, for any consideration, an alcoholic beverage is either directly *or indirectly transferred, solicited, ordered, delivered for value, or by any means or under any pretext is promised or obtained, whether done by a person as a princi-* pal, proprietor, or as an agent, servant, or employee." Utah Code. Ann. § 32A–1–105(47) (Supp. 1998) (emphasis added).

**7.** The Commerce Clause provides: "The Congress shall have the Power ... [t]o regulate Commerce with foreign nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

tempting to regulate delivery and use of liquor transported outside of New York, the Commerce Clause trumped the Twenty–First Amendment, and the state law had to give way. *See id.* However, the Court made clear that "a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for *use, distribution, or consumption within its borders.*" *Id.* at 330, 84 S.Ct. at 1297 (emphasis added).

¶ 24   In *Brown–Forman Distillers v. New York State,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), the Court struck down, again under the Commerce Clause, New York's "affirmation law" that required distillers to affirm that they were selling to New York wholesalers at a price "no higher than the lowest price the distiller charges wholesalers anywhere else in the United States." *Id.* at 476 U.S. at 575, 106 S.Ct. at 2082.  The Court noted the Twenty–First Amendment "speaks only to state regulation of the 'transportation or importation into any State ... for delivery or use therein' of alcoholic beverages." *Id.* at 585, 106 S.Ct. at 2087.  The Court concluded "that [the fact that] New York has attempted to regulate sales in other States of liquor that will be consumed in other States therefore disposes of the Twenty–First Amendment issue." *Id.*

■ ¶ 25   Unlike *Hostetter* and *Brown–Forman,* the liquor at issue in this case was shipped to be consumed by Utah residents in Utah.  Utah is not attempting to regulate the sale of alcohol that will be consumed in another state.  Instead, Utah seeks to regulate the "transportation or importation into" Utah "for delivery or use therein of intoxicating liquors, in violation of the laws thereof." These goals are at the core of the Twenty–First Amendment.

¶ 26   BAA also relies on *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).  In that case, an Oklahoma statute prohibited the advertising of alcoholic beverages, except by means of strictly regulated on-premises signs.  The Oklahoma Attorney General determined that this ban prohibited cable television systems operating in Oklahoma from retransmitting out-of-state signals containing alcoholic beverage commercials.  Petitioners, operators of cable television systems in Oklahoma—who, with other such operators, had been warned by the Director of the Oklahoma Alcoholic Beverage Control Board that they would be criminally prosecuted if they carried out-of-state wine advertisements—filed suit, alleging that Oklahoma's policy violated various provisions of the Federal Constitution, including the Supremacy Clause and the First Amendment.  *See id.* at 695–96, 104 S.Ct. at 2698–99.

¶ 27   The Supreme Court struck down the law and held:

> In rejecting the claim that the Twenty–First Amendment ousted the Federal Government of all jurisdiction over interstate traffic in liquor, we have held that when a State has not attempted directly to regulate the sale or use of liquor within its borders—the core § 2 power—a conflicting exercise of federal authority may prevail.

*Id.* at 713, 104 S.Ct. at 2707.

¶ 28   The Court further stated:

> [W]e hold that when, as here, a state regulation squarely conflicts with the accomplishment and execution of the full purposes of federal law, and the State's central power under the Twenty–First Amendment of regulating the times, places, and manner under which liquor may be imported and sold is not directly implicated, the balance between state and federal power tips decisively in favor of the federal law, and enforcement of the state statute is barred by the Supremacy Clause.

*Id.* at 716, 104 S.Ct. at 2709.

¶ 29   Further, in 1980, the Court found unconstitutional California's minimum wine-pricing mechanism, which prohibited liquor manufacturers from selling at below the price prescribed in a minimum price schedule.  *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).  In that case, the Court conceded that as to core Twenty–First Amendment powers (i.e., liquor importation and distribution), California's authority was virtually unlimited, but

stated that when states attempt to exercise their "substantial discretion" over other areas of liquor control, "those controls may be subject to the federal commerce power in appropriate situations." *Id.* at 110, 100 S.Ct. at 946. The Court held that the federal interest in preventing restraints on trade via the Sherman Act prevailed and struck the law. *See id.* at 113–14, 100 S.Ct. at 947.

¶ 30 We note that in *Capital Cities Cable, Inc.* and *California Retail Liquor Dealers Ass'n*, the attempted state regulation of alcohol under the Twenty–First Amendment was in direct violation of other federal statutory or constitutional law, unlike the case before us. These cases are further distinguishable in that they did not involve core powers under the Twenty–First Amendment (i.e., the power to ban importation of liquor that will be consumed by state residents).

¶ 31 We conclude that Utah's prosecution is valid under the Twenty–First Amendment, and does not run afoul of the Commerce Clause. We note that Utah's attempt to enforce its liquor laws does not conflict with any federal statute or constitutional provision other than the alleged violation of the Commerce Clause. Even if we assume for purposes of argument that another federal law was implicated in this case (and BAA has directed our attention to none), we note that "the interests implicated by [Utah's ABCA] are so closely related to the powers reserved by the Twenty–First Amendment that the

regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Capital Cities Cable, Inc.*, 467 U.S. at 714, 104 S.Ct. at 2708. In sum, we conclude that Utah's ABCA derives from a core Twenty–First Amendment power.[8] Namely, the statute seeks to regulate the consumption, importation, manufacture, and transportation of liquor in or to Utah, and is therefore constitutional.

## CONCLUSION

¶ 32 First, we hold that the State's arguments were properly preserved. Next, we hold that Utah has personal and subject matter jurisdiction over BAA. Finally, we conclude that Utah's prosecution of these ABCA offenses are proper under the Twenty–First Amendment and do not run afoul of the Commerce Clause. We therefore reverse and remand for proceedings consistent with this opinion.

¶ 33 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and PAMELA T. GREENWOOD, Associate Presiding Judge.

---

8. In our analysis and conclusion we have relied in part on the analytical scheme recently suggested by one commentator. *See* Sidney J. Spaeth, *The Twenty–First Amendment and State Control Over Intoxicating Liquor: Accommodating the Federal Interest*, 79 Cal. L.Rev. 161 (1991).