C. S. PRICE, Respondent, v. WESTERN LOAN AND SAVINGS COMPANY, a Corporation, Appellant.

No. 1859.   Decided January 2, 1909 (100 Pac. 677).

1. APPEAL AND ERROR—DISMISSAL—DEFECTS IN PROCEEDINGS FOR REVIEW. That an appeal is taken also from an order denying a new trial, which is not appealable, does not warrant dismissal of an appeal from the judgment.[1]   (Page 385.)

2. APPEAL AND ERROR—NOTICE—SUFFICIENCY. Where respondent was not misled or prejudiced by the mistake in the notice of appeal of the insertion of the wrong date in the notice as to when the judgment appealed from was rendered, the mistake did not vitiate the appeal.   (Page 385.)

3. APPEAL AND ERROR—NOTICE. Since the object of a notice of appeal is only to advise the adverse party that an appeal has been taken from a specific judgment, an appeal will not be dismissed because the notice of appeal, which expressly stated that the appeal was from the judgment, erroneously stated as the date of entry of judgment the date when a new trial was denied, on the ground that the notice stated an appeal from a denial of a new trial, which is not appealable.   (Page 385.)

4. APPEAL AND ERROR—STATUTES GIVING RIGHT TO APPEAL—CONSTRUCTION. Statutes giving the right of appeal are to be liberally construed.   (Page 385.)

5. APPEAL AND ERROR—DEFECT IN UNDERTAKING—EFFECT. Under Comp. Laws 1907, sec. 3319, authorizing the Supreme Court to permit appellant to file a new undertaking, an appeal will not be dismissed merely because the undertaking on appeal is defective because it secures the payment of a judgment the date of entry of which is incorrectly recited.   (Page 386.)

---

[1] White v. Pease, 15 Utah 170, 49 Pac. 416; Watson v. Mayberry, 15 Utah 265, 49 Pac. 479; Bear River V. Co. v. Hanley, 15 Utah 506, 50 Pac. 611; Bacon v. Thornton, 16 Utah 138, 51 Pac. 153.

6. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—CONSTRUC-
TION. The court, in construing a contract of employment, must
consider the circumstances under which it was entered into,
the relation of the parties to each other, and the consideration
passing from employee to employer. (Page 386.)

7. ATTORNEY AND CLIENT—CONTRACT EMPLOYING ATTORNEY—CON-
STRUCTION. A building association employed an attorney as
general attorney, paying him fees for his services. The arrange-
ment was mutually terminated, and a new contract was made,
reciting that the attorney agreed to render all legal services
for a specified sum per month to continue as long as the ser-
vices were satisfactory, and that his services were not to be
dispensed with without good reason appearing therefor. Held
that, since the contract did not bind the attorney to act as at-
torney for any specified period, it lacked the element of mu-
tuality of obligation and was terminable at the will of either
party. (Page 387.)

8. ATTORNEY AND CLIENT—CONTRACT OF EMPLOYMENT—DISCHARGE OF
ATTORNEY—GROUNDS. A contract, whereby a building associa-
tion employed an attorney, stipulated that it should continue
as long as the services of the attorney were satisfactory, and
that his services were not to be dispensed with without good
reason. The services of an attorney were indispensable to the
successful carrying on of the business of the association. Sev-
eral months prior to the discharge of the attorney, the rela-
tions between him and the officers of the association became
unpleasant, and neither the attorney nor the president and man-
ager of the association had any confidence in each other. The
discord was detrimental to the interest of the association. The
party responsible for the discord was not disclosed. Held, that
the association was justified in discharging the attorney. (Page
388.)

9. ATTORNEY AND CLIENT—NATURE OF RELATIONSHIP. The relation-
ship of attorney and client is one of reliance, trust, and confi-
dence, and a client may discharge his attorney, where the lack
of confidence in the attorney seriously impairs his efficiency and
interferes with his opportunity to serve the client. (Page 389.)

10. ATTORNEY AND CLIENT—DISCHARGE OF EMPLOYMENT. Where the
discharge of an attorney under a contract of employment is
without cause, or where the attorney is not alone derelict, or
where both parties are in fault and are equally responsible for
the condition which makes it necessary for the client to dis-
pense with the services of the attorney and employ another,
the attorney may recover for the services performed under the
contract. (Page 389.)

APPEAL from Third District Court, Salt Lake County.—
*Hon. M. L. Ritchie,* Judge.

Action to recover attorney's fees. From a judgment for
plaintiff, the defendant appealed.

REVERSED.

*James Ingebretsen* and *W. H. King* for appellant.

*Messrs. Edwards & Smith* for respondent.

STATEMENTS OF FACTS.

Plaintiff is an attorney at law, and ever since the year
1897 has been engaged in the active practice of his profes-
sion in the state of Utah and in the courts of some adjoin-
ing states. The defendant, during all of said time, was a
corporation engaged in the business of lending money upon
real estate security in this and other states. Its loans were
made upon the building and loan association plan. In the
early part of the year 1901, defendant employed Price (the
plaintiff) as its attorney, and until the month of May, 1904,
he continued to act as the attorney for the defendant with-
out any special contract other than a general understanding
as to the amount of fees to be charged by Price for particu-
lar work. The company, during all that time, paid him $10
for each abstract of title he examined in its behalf, and in
cases where foreclosure proceedings were instituted out of
the state it paid him $10 in each case for services performed
in forwarding the papers in the case to a nonresident at-
torney, and for services rendered in defending suits against
the company it paid him such reasonable fees as might be ar-
ranged and agreed upon in each case. In some cases of fore-
closure of mortgages brought by Price in behalf of the com-
pany he was paid the amount allowed by the court as attor-
ney's fees, and in some instances he was paid a part only of

such fees. During the time he was thus employed he received in fees for services rendered the company approximately $150 to $200 per month. In May, 1904, P. W. Madsen, president and business manager of the company objected to paying Price fees for his work, on the ground that he was "making too much money and the company too little," and proposed to pay him a salary of $100 per month. This offer was accepted by Price, who immediately wrote the company the following letter, which contains the terms of the offer and the conditions upon which the offer was accepted: "Salt Lake City, Utah, May 3, 1904. Western Loan & Savings Company, City—Gentlemen: In pursuance to an understanding had with Mr. P. W. Madsen, president and manager of your company, with reference to the compensation I am to receive from your company for all legal services rendered it whether for the examination of abstracts of title, or for the preparation and trial of foreclosures, permit me to say that I will agree, and do hereby agree, to render all such legal services for $100 a month, commencing with the 1st of May, 1904, and to continue so long as my services are as satisfactory as they have been in the past two years. It is understood that my services are not to be dispensed with so long as such services are necessary, without good reason appearing therefor."

This letter was received and terms and conditions therein mentioned agreed to by the company. From that time until May 31st, 1905, a period of about thirteen months, Price and the company complied with the terms of the contract as outlined in the letter, Price performing all services required of him as attorney, and the company paying therefor $100 per month. In the latter part of May, 1905, Price was informed by Madsen that the company had decided to dispense with his services and to employ another attorney. Price, however, refused to treat his contract as terminated and stood ready to perform all services of a legal character that might be required of him by the company, and he so informed Madsen. Thereupon Madsen formally discharged

Price by sending him a letter, of which the following is a copy: "Salt Lake City, Utah, May 31, 1905. Mr. C. S. Price, City—Dear Sir: This is formally to confirm the verbal notice I gave you on or about the 20th inst. that your services as attorney for the Western Loan & Savings Company would end and terminate on the 31st day of May, 1905, as it has not been entirely satisfactory. Yours truly, P. W. Madsen, President." Price elected to treat the contract as rescinded and commenced this action in *quantum meruit* for the value of his services from the time the contract in question was entered into until the time he was discharged by the company. Evidence was introduced showing each particular business transaction during said time in which Price performed services for the company and the reasonable value thereof, the sum total of which amounted to $2,375. From this sum the court deducted the amount paid Price as salary ($1,300) for the thirteen months in which he transacted the legal business of the company for $100 per month, leaving a balance of $1,075, which sum the court found was due Price from the company, and entered judgment in his favor for that amount. To reverse the judgment defendant has brought the case on appeal to this court.

McCARTY, C. J. (after stating the facts as above).

Long after this case was argued and submitted, respondent filed a motion to dismiss the appeal. One of the grounds assigned is that this court is without jurisdiction to determine the questions involved, except to dismiss the appeal for the reason "that the appeal, as designated in said notice of appeal, is not an appeal from a final judgment, but . . . is an appeal from an order or judgment overruling a motion for a new trial." The record shows that the judgment was rendered September 26th, 1906, and that a motion for a new trial was filed October 2nd, and overruled December 8th, 1906. The notice of appeal (omitting the title) is as

follows: "To the above-named defendant, C. S. Price, and to Edwards & Smith, his attorneys: You and each of you will please take notice that the defendant in the above-entitled action hereby appeals to the Supreme Court of the State of Utah from the judgment, and the whole thereof, made, rendered, and entered in favor of the plaintiff and against the defendant. in said district court of the Third. Judicial District in and for the County of Salt Lake and State of Utah on the 8th day of December, A. D. 1906, at which said time the court denied and overruled the defendant's motion for a new trial theretofore made and filed, and entered judgment as aforesaid for the plaintiff and against the defendant in the sum of $1,075, together with interest and costs taxed in the sum of $21.10."

Respondent contends that this is an appeal from an order of the court made and entered December 8th, 1906, denying and overruling appellant's motion for a new trial, and not an appeal from the final judgment rendered in the case. Of course, if the appeal is from the order denying and overruling appellant's motion for a new trial, and not from the final judgment, respondent's motion to dismiss must prevail. But is the appeal from an order overruling a motion for a new trial? We think not. While we do not regard the notice of appeal as a model, yet we deem it sufficient to show an appeal from the judgment. It recites that the appeal is taken "from the judgment and the whole thereof made and entered in favor of plaintiff and against the defendant . . . on the 8th day of December, A. D. 1906, . . . in the sum of $1,075, together with interest and costs taxed in the sum of $21.10." No claim is made that the respondent has been misled or in any wise prejudiced by the statement in the notice of appeal that the judgment appealed from was rendered on the 8th day of December, 1906, instead of September 26th, 1906, the true date thereof. The most that can be said in favor of respondent's position is that the appeal is taken both from an order overruling a motion for a new trial and from a final judg-

ment. Conceding, for the purposes of this appeal, that such is the case, it does not vitiate the appeal. (2 Spelling, New Tr. & App. Pro. 524; *White v. Pease,* 15 Utah 170, 49 Pac. 416; *Watson v. Mayberry,* 15 Utah 265, 49 Pac. 479; *Bear River V. Co. v. Hanley,* 15 Utah 506, 50 Pac. 611; *Bacon v. Thornton,* 16 Utah 138, 51 Pac. 153.) Nor was the appeal rendered abortive because of the insertion of a wrong date in the notice as to when the judgment appealed from was rendered; it clearly appearing from the record that the respondent was neither misled nor in any way prejudiced by the mistake. (2 Spelling, New Tr. & App. Pro. 524; *Weyl v. Sonoma Valley R. R. Co.,* 69 Cal. 202, 10 Pac. 510.) The object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case. If the notice is plain and explicit in this particular and sufficient in all other requisites, it ought not to be declared a nullity. The trend of modern authority is to the effect that statutes giving the right of appeal are to be liberally construed. In Sutherland on Statutory Construction (2d Ed.), sec. 717, it is said: "Statutes giving the right of appeal are liberally construed in furtherance of justice. Such an interpretation as will work a forfeiture of that right is not favored." This same doctrine is announced in 1 Spelling, New Tr. & App. Pro. 534; Elliott, App. Pro. 171; *Watson v. Mayberry, supra; Mendenhall v. Elwert* [Or.], 52 Pac. 22.

The next ground assigned for the dismissal of the appeal is that no undertaking was filed as required by law, for the reason that it recites that it is to secure the payment of a judgment made and entered on the 8th day of December, 1906, instead of securing the payment of the judgment appealed from, namely, a judgment made and entered in the district court September 26th, 1906. Assuming, for the purposes of this appeal, that the undertaking is open to the

objection urged against it, it does not necessarily follow that the appeal must or should be dismissed. Under section 3319, Comp. Laws 1907, this court could permit appellant to file a new undertaking; but, in view of the disposition that must be made of the case on this appeal, we deem it unnecessary to make such an order.

The motion to dismiss is overruled and denied.

Coming now to the merits of the case: The first ground urged why the judgment should be reversed is that the contract in question lacks mutuality. Counsel for appellant contends that while the contract provides that the appellant shall not dispense with the services of respondent so long as such services are necessary, and so long as they "are as satisfactory as they have been in the past two years," it does not obligate respondent to continue in the employment of appellant for any definite period of time. In other words, counsel contend—if we correctly understand their position —that in contracts of this kind there must be a two-fold obligation; an obligation on the part of the employee to enter the service and to continue therein, and a corresponding obligation on the part of the employer to hire. We think it will be conceded that under the terms of the contract respondent was not bound to continue in the service of appellant for any definite length of time; that is, he could terminate the contract at will. In construing this kind of a contract, it is necessary to consider the circumstances under which it was entered into, the relations of the parties to each other, and the consideration passing from the employee to the employer. There is a line of well-reasoned cases which hold that a contract of hire, where part of the consideration is paid in advance and the employee has parted with value, such as the release of a claim for damages against his employer, and the latter has been correspondingly benefited thereby, is not wanting in mutuality. In such cases it is said that no reciprocal promise binding the employee to serve for any definite period of time is necessary, for the release is held to be sufficient consideration

to uphold the contract. The following are a few of the cases which illustrate and uphold this doctrine: *East Line & R. R. R. Co. v. Scott,* 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758; *Pennsylvania v. Dolan,* 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289; *Smith v. St. Paul & D. R. Co.,* 60 Minn. 330, 62 N. W. 392; *Carter White Lead Co. v. Kinlin,* 47 Neb. 409, 66 N. W. 536; *Pierce v. Tenn. Coal, Iron & R. Co.,* 110 Ala. 533, 19 So. 22. Respondent seeks to apply the rule announced in these cases to the case at bar; but the difficulty is that in this case the record shows that about the 1st of May, 1904, the parties mutually terminated the arrangement under which respondent had for two years been acting as the general attorney for the appellant and entered into a new and independent contract, namely, the contract in question, whereby respondent agreed to continue to act as general counsel for the company at a fixed salary of $100 per month. The only consideration that passed from the respondent for the employment at the time the contract was entered into was his promise to perform the services therein mentioned. In pursuance of the terms of the contract and the services rendered by respondent thereunder, appellant paid him $100 at the end of each month, which sum he accepted in full satisfaction of all services performed by him during said month, regardless of the amount or importance of the services rendered. As hereinbefore observed, the contract, neither expressly nor impliedly, bound him to act as appellant's attorney for any specified period of time. Therefore it lacked the essential element of mutuality of obligation and was terminable at will by either party. (1 Page on Contracts, sec. 304; *Louisville & Nashville R. Co. v. Offutt,* 99 Ky. 427, 36 S. W. 181, 59 Am. St. Rep. 467; *Bolles v. Sachs,* 37 Minn. 315, 33 N. W. 862; *St. Louis, etc., R. Co. v. Matthews,* 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467; *Dorsey v. Packwood,* 12 How. 126, 13 L. Ed. 921; 9 Cyc. 327, and numerous cases cited in note 20.)

Appellant's next contention is that, if the contract is not

open to the objection that it lacks mutuality, the judgment would still have to be reversed because of the alleged erroneous findings made by the court. The court in its ninth finding found: "That the discharge of plaintiff by defendant was without cause, . . . and said defendant thereby violated the terms and conditions of said agreement, to the injury and damage of the plaintiff." It is insisted that this finding is not only unsupported by, but is contrary to, the evidence. We think this contention must be upheld. Respondent's letter to appellant of May 3rd, 1904, which contains the terms and conditions of the contract, concludes as follows: "It is understood that my services are not to be dispensed with so long as such services are necessary and without good reason appearing therefor." It is claimed that the undisputed evidence shows that appellant had good reason for discharging respondent. It appears from the record that for several months prior to the discharge of respondent the relations between him and some of the officers of the company had been very unpleasant, and that there was much dissension between them over the business affairs of the company. These strained relations were very pronounced as between respondent and P. W. Madsen, who was president and business manager of the company. Neither appeared to have any respect for or confidence in the other. This feeling of ill will and resentment, which was the cause of much discord between them over matters pertaining to the management of the business of the company, became known to the finance committee, whose duty it was to employ all help required by the company, including attorneys, and the committee ordered Madsen to discharge respondent. As to which of the parties was responsible for the ill will, discord, and lack of confidence that existed, we are not concerned. That these parties, especially Madsen and Price, mutually disliked each other, and that this feeling of ill will and discord must have been, at least to some extent, detrimental to the interests of the company, we think is conclusively shown by the evidence. The record shows

that the services of an attorney were indispensable to the
successful carrying on of the business in which the appellant
was engaged. Not a loan could be made without the advice
and assistance of an attorney. The very nature of the busi-
ness rendered it necessary for the officers of the company
who had control and management of its business to contin-
ually consult and refer matters to the attorney. Besides, the
evidence shows that the company was almost continually en-
gaged in litigation before the courts of this and other states.
It therefore requires no argument to show that to compel
the company to continue in its employ an attorney under
such strained and discordant relations would not only be
detrimental to the successful carrying on of the business in
which it was engaged, but might in course of time, jeopardize
its very existence. Therefore we think the condition of af-
fairs as shown by the undisputed evidence in the
case afforded appellant good reason for discharging
respondent. Furthermore, the law holds the rela-
tionship of attorney and client to be one of reliance, trust,
and confidence, and, as was said in the case of *Henry v.
Vance,* 111 Ky. 72, 63 S. W. 273:

"It would not do to require a party to continue in his service
one whom he distrusts, or whose capacity he no longer believes in,
nor to permit the attorney under such circumstances to continue
the relationship, where the lack of confidence would seriously im-
pair his efficiency and interfere with his full opportunity to serve
the party and the court as his office requires. That the client has
the right to discharge his attorney at any time without cause . . .
cannot well be doubted." (Mechem on Agency, 856; *Tenney v.
Berger,* 93 N. Y. 524, 45 Am. Rep. 263; 4 Cyc. 554.)

When the discharge is without cause, or where
it is shown that the attorney is not alone derelict, but
that both parties are at fault and are equally responsible
for the unfortunate condition of affairs, which makes
it necessary for the client, in the interest
of his business, to dispense with the services of the
attorney in his employment and employ another, the attorney
may recover for the services already performed by him under

his contract of employment. (Weeks on Attorneys, sec. 334; Mechem on Agency, 856.) In this case, however, respondent was paid the contract price for his services, $100 per month for each and every month he was in the employ of appellant under the contract in question.

The judgment is reversed, and the cause remanded for a new trial; appellant to recover costs.

STRAUP, J., and LEWIS, District Judge, concur.