1999 UT App 303

**U.P.C., INC., dba Garco Industrial Park, Plaintiff and Appellant,**

v.

**R.O.A. GENERAL, INC., dba Reagan Outdoor Advertising, Defendant and Appellee.**

No. 980280–CA.

Court of Appeals of Utah.

Oct. 21, 1999.

F. Mark Hansen, Salt Lake City, for Appellant.

Richard A. Rappaport, and Leslie Vanfrank, Cohne, Rappaport & Segal, Salt Lake City, for Appellee.

Before WILKINS, P.J, BILLINGS, and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiff, Garco Industrial Park (Garco), challenges the trial court's order dismissing its complaint against defendant Reagan Outdoor Advertising General, Inc. (Reagan), denying its Motion to Revise Order and Judgment Dismissing Plaintiff's Complaint, and granting Reagan's Motion to Strike. We affirm.

## BACKGROUND

¶ 2 Reagan and Garco's relationship arises from a 1975 lease between Reagan and Garco's predecessor-in-interest which entitled Reagan to maintain an outdoor advertising sign on Garco's property. Garco purchased the property in 1990, at which time Reagan's sign was still in place. During the early 1990s, Garco and Reagan tried to negotiate a new lease, as the 1975 lease was due to expire on July 8, 1995. The negotiations failed, and in correspondence dated February 23, 1995, Garco told Reagan that it had "elected to pursue other options" and demanded that Reagan remove its sign by July 8, 1995.

¶ 3 Initially, Garco was concerned about Reagan removing the sign's foundation because that may have compromised the integrity of the adjacent building. Additionally, in correspondence between the parties, Garco mentioned that it may use the foundation to place a different sign at that location. Notwithstanding, after the lease expired, Garco demanded that Reagan also remove the foundation, which Reagan has never done.

¶ 4 After Garco told Reagan to remove its sign by lease end, Reagan entered into a lease agreement to erect a new sign on adjacent property. Reagan's new sign is less than five hundred feet from Garco's southern property line. Because Utah law requires 500-foot spacing between outdoor advertising signs, see Utah Code Ann. § 72–7–505(3)(a) (Supp.1999), Garco cannot contract with any of Reagan's competitors to place a sign on its property. Because of this and Reagan's refusal to remove the sign's foundation, Garco brought suit against Reagan alleging trespass, unlawful detainer, intentional interfer-

ence with potential economic relations, unfair practices, and a claim of relief for punitive damages. Reagan filed a counterclaim for breach of a covenant against competition.

¶ 5 In August 1997, Reagan filed a motion for summary judgment on all Garco's claims. Three months later, Garco filed a cross-motion for partial summary judgment with supporting affidavits, seeking dismissal of Reagan's counterclaim. On December 29, 1997, the trial court entered an Order and Judgment Dismissing Plaintiff's Complaint. The order granted Reagan's motion for summary judgment and dismissed Garco's complaint in its entirety. At that time, Reagan's counterclaim and Garco's cross-motion for partial summary judgment was still pending. Shortly thereafter, Garco filed a "Motion to Revise Order and Judgment Dismissing Plaintiff's Complaint" (motion to revise) under Utah Rule of Civil Procedure 54(b), seeking reversal of the trial court's summary judgment ruling. Reagan then filed a motion to strike portions of Garco's reply memorandum in support of its motion to revise.

¶ 6 On May 1, 1998, the trial court entered two orders. First, it denied Garco's motion to revise and granted Reagan's motion to strike. Second, it dismissed Reagan's counterclaim based on the stipulation of the parties. Garco then filed a notice of appeal, which provided that Garco "appeals ... the final order ... entered in this matter on May 1, 1998. The appeal is taken from the entire order."

## ISSUES

¶ 7 Garco raises numerous issues on appeal arising from two orders of the trial court: the December 29, 1997 order dismissing its complaint against Reagan, and the May 1, 1998 order denying its motion to revise and granting Reagan's motion to strike portions of its reply memorandum in support of its motion to revise.

¶ 8 Challenging the December 29, 1997 order, Garco argues the trial court erred by dismissing the following causes: (1) trespass; (2) unlawful detainer; (3) intentional interference with potential economic relations; and (4) its claim of relief for punitive damages.

Reagan contends that Garco's notice of appeal was insufficient for Garco to raise these issues on appeal, and, in any event, the trial court correctly dismissed Garco's complaint.

¶ 9　In its challenge to the May 1, 1998 order, Garco maintains the trial court erred by denying its motion to revise and by granting Reagan's motion to strike.

## I.　ANALYSIS

### A.　*Adequacy of Notice of Appeal*

■　¶ 10　Garco challenges the trial court's December 29, 1997 order dismissing its complaint against Reagan. Reagan argues that this court is without jurisdiction to hear Garco's appeal of the December 29, 1997 order because Garco failed to particularly identify that order in its notice of appeal.

¶ 11　Rule 3(d) of the Utah Rules of Appellate Procedure governs the content of a notice of appeal: "The notice of appeal . . . shall designate the judgment or order, or part thereof, appealed from . . . ." This language has been interpreted by our supreme court. First, in *Scudder v. Kennecott Copper Corp.*, 886 P.2d 48 (Utah 1994), Scudder brought a personal injury suit against Kennecott Copper Corp. (Kennecott) and Stearns Catalytic Corp. (Stearns). *See id.* at 49. Stearns in turn filed a third-party complaint against Weyher–Livsey Constructors, Inc. (Weyher–Livsey). *See id.* Before the trial began, the trial court granted summary judgment in Weyher–Livsey's favor and dismissed it from the suit. *See id.* The case then proceeded to trial and a jury verdict was reached, finding both Kennecott and Stearns liable to Scudder for his injuries. *See id.*

¶ 12　Stearns appealed to this court, which reversed the earlier summary judgment granted in Weyher–Livsey's favor. *See id.* On certiorari, the supreme court addressed the issue of whether Stearns's notice of appeal complied with Rule 3(d) of the Utah Rules of Appellate Procedure. *See id.* at 49–50. Weyher–Livsey argued that the court of appeals lacked the requisite jurisdiction to hear Stearns's appeal because, inter alia, it failed "to designate that the appeal was tak-en from the summary judgment as well as from the final judgment that had been entered on the jury verdict." *Id.*

¶ 13　Interpreting the same language at issue in this case, the court held: "When appealing from an entire final judgment as Stearns did here, *it is not necessary to specify each interlocutory order of which the appellant seeks review.*" *Id.* at 50 (emphasis added). It was further noted that: "[W]hen an appeal is taken from a final judgment, '[t]here is no requirement that the notice designate intermediate orders which are to be raised as issues on appeal.'" *Id.* (quoting *Rourk v. State,* 170 Ariz. 6, 821 P.2d 273, 280 (Ct.App.1991)) (second alteration in original).

¶ 14　The Utah Supreme Court again addressed Rule 3(d) in *Zions First National Bank v. Rocky Mountain Irrigation, Inc.,* 931 P.2d 142 (Utah 1997). There, Zions First National Bank (Zions) filed suit against Grant and Ruby Cooper (the Coopers), who were doing business as Rocky Mountain Irrigation, Inc. *See id.* at 143. The Coopers counterclaimed. *See id.* Before trial, the trial court dismissed the Coopers' fraud claim and also directed a verdict on the part of their racketeering counterclaim that relied on fraud. *See id.* at 144.

¶ 15　A jury returned a verdict in favor of Zions; the trial court then dismissed the Coopers' claims and entered a final judgment in favor of Zions. *See id.* On appeal, the supreme court held that the trial court erred by dismissing the fraud claim and directing a verdict on the racketeering counterclaim, remanding those issues back to the trial court. *See id.*

¶ 16　On remand, the trial court dismissed the racketeering counterclaim and sent the fraud claim to a jury. *See id.* The jury returned a verdict in favor of Zions, and the trial court therefore dismissed the Coopers' claims and entered a final judgment thereon. *See id.* The Coopers appealed for a second time to the supreme court.

¶ 17　On the second appeal, "Zions contend[ed] that because the Coopers' notice of appeal designate[d] only the final judgment, they [were] precluded from raising issues relating to any other proceedings or orders

leading up to the judgment." *Id.* As in *Kennecott*, the supreme court again interpreted the language in Rule 3(d) at issue here: " 'The notice of appeal ... shall designate the judgment or order, or part thereof, appealed from....' " *Id.* (quoting Utah R.App. P. 3(d)). The court reiterated its holding in *Kennecott* that "[t]here is no· requirement under this rule that an appellant must indicate that the appeal also concerns intermediate orders or events that have led to that final judgment." *Id.* The court went on to hold that "[b]ecause the Coopers complied with rule 3(d) and *generally designated the final judgment in their notice of appeal,* they are not precluded from alleging errors in any intermediate order involving the merits or *necessarily affecting* the judgment as long as such errors were properly preserved." *Id.* (emphasis added).

¶ 18   Lastly, and most recently, the Utah Supreme Court addressed the same Rule 3(d) language, albeit with a different result. In *Jensen v. Intermountain Power Agency,* 977 P.2d 474 (Utah 1999), Jensen filed suit against Intermountain Power Agency (IPA), setting forth numerous causes of actions. *See id.* at 475.   Before trial, the court entered a partial summary judgment in favor of IPA on Jensen's easement and water rights claims, and therefore dismissed those claims. *See id.* at 475–76.   A jury trial was held on the other issues. *See id.* at 476.   The jury returned a verdict in favor of IPA, and the trial court therefore dismissed Jensen's remaining claims. *See id.*   Jensen filed a motion for a judgment notwithstanding the verdict and a separate motion for a new trial. *See id.*   The trial court denied both motions and thereafter entered a final judgment, which Jensen appealed. *See id.*

¶ 19   In his appellate brief, Jensen attacked both the jury verdict and the earlier partial summary judgment. *See id.*   IPA, however, moved to either limit the scope of appeal or for summary disposition on the issues relating to the partial summary judgment. *See id.*   IPA argued that the supreme court did not have "jurisdiction to review the partial summary judgment because Jensen did not appeal from the judgment finalizing it." *Id.*

¶ 20   The supreme court discussed the content of Jensen's notice of appeal:

Jensen's notice of appeal states that he appeals from "the jury verdict entered ... on July 14, 1995," and the trial court's "denial of his Rule 50 and Rule 59 motion, which denial was entered ... on October 10, 1995."   Jensen did not state in his notice that he was appealing either the February 2, 1994, judgment granting IPA partial summary judgment or the August 10, 1995, final judgment concerning both the jury verdict and the partial summary judgment. *Thus, neither of the judgments Jensen listed in his notice deals with the partial summary judgment.*

*Id.* (emphasis added; alterations in original).

¶ 21   Jensen's "fail[ure]" to notice an appeal from any judgment related to the partial summary judgment" was fatal to his ability to appeal those issues addressed in the partial summary judgment. *Id.* Although Jensen argued that his motion for a new trial encompassed the partial summary judgment, the court noted that "Jensen's motion for a new trial was addressed only to those claims that went to the jury, which did not include the [issues addressed in the partial summary judgment.]" *Id.*

¶ 22   Additionally, the supreme court found that IPA was prejudiced by Jensen's failure to "notice an appeal from any judgment related to the partial summary judgment." *Id.* Because of Jensen's deficient notice of appeal, IPA did not file any cross-appeals pertaining to the partial summary judgment. *See id.*   Jensen's error and the resulting prejudice to IPA was not cured by the docketing statement because it was filed after IPA's time for filing a cross-appeal had expired. *See id.*

¶ 23   The analysis in *Jensen* is instructive and consistent with *Kennecott* and *Zions.*   If Jensen had appealed from a final judgment relating to the partial summary judgment, IPA would not have been prejudiced by any failure to particularly identify the partial summary judgment in his notice of appeal because IPA would have had the requisite notice. *Kennecott, Zions,* and *Jensen* clearly and unambiguously stand for the

proposition that a party who seeks to appeal a nonfinal summary judgment need not specifically identify that summary judgment in the notice of appeal, but need only identify a final judgment that relates to that summary judgment.

¶ 24 Ruling on Reagan's Motion for Summary Judgment, the trial court in the case at bar entered an "Order and Judgment Dismissing Plaintiff's Complaint" (summary judgment). The summary judgment addressed each cause of action raised in Garco's complaint and dismissed each one with prejudice. Because Reagan's counterclaim was still pending before the trial court, the summary judgment was not a final, appealable order. *See* Utah R. Civ. P. 54.

¶ 25 Garco then filed its Rule 54(b) motion entitled, "Motion to Revise Order and Judgment Dismissing Plaintiff's Complaint," requesting that the trial court "revis[e] the Court's Order and Judgment Dismissing Plaintiff's Complaint." On May 1, 1998, the trial court entered an order denying Garco's Motion to Revise, ruling in its Memorandum Decision that "[n]one of [Garco's] arguments persuade the Court that its original ruling was not proper. On the contrary, [Garco's] arguments essentially rehash arguments already fully considered." Thus, the trial court did reconsider the Order and Judgment Dismissing Plaintiff's Complaint, but declined to revise its earlier ruling.

¶ 26 Clearly, the subject matter of Garco's Motion to Revise Order and Judgment Dismissing Plaintiff's Complaint was the summary judgment. Thus, Garco's Rule 54(b) motion, under the procedural posture of this case, had no free-standing, substantive existence apart from the summary judgment. The May 1, 1998 order denying Garco's Rule 54(b) motion also was the final judgment in the case,[1] having the effect of making the summary judgment final and appealable.

¶ 27 Garco's notice of appeal states, in relevant part, that it appeals "the final order of the Honorable William B. Bohling entered in this matter on May 1, 1998. The appeal is taken from the entire order." It is inconceivable that this language does not relate to the summary judgment since the subject matter of the May 1, 1998 order was the very summary judgment the trial court declined to revise. Accordingly, under *Kennecott, Zions,* and *Jensen,* Garco sufficiently noticed an appeal from a final judgment that related to the summary judgment. Because Garco "generally designated the final judgment in [its] notice of appeal, [it is] not precluded from alleging errors in any intermediate order involving the merits or necessarily affecting the judgment as long as such errors were properly preserved." *Zions,* 931 P.2d at 144. This court should and must therefore exercise its jurisdiction over that part of Garco's appeal that addresses the issues disposed of in the summary judgment.[2]

¶ 28 To hold otherwise would be unduly harsh, does not further the underlying purpose of a notice of appeal, and is in direct contradiction of our jurisprudence governing the right of appeal. " 'Statutes giving the right of appeal are liberally construed in furtherance of justice. Such an interpretation as will work a forfeiture of that right is not favored.' " *Price v. Western Loan & Sav. Co.,* 35 Utah 379, 100 P. 677, 679 (1909) (citation omitted).

### B. *Order Dismissing Complaint*

¶ 29 On December 29, 1997, the trial court entered its Order and Judgment Dismissing Plaintiff's Complaint granting Reagan's motion for summary judgment and dismissing Garco's complaint in its entirety. Garco appeals several issues ruled upon in

---

1. The trial court contemporaneously entered an order dismissing Reagan's counterclaim without prejudice, thereby disposing of all remaining issues in the case.

2. Because Garco's notice of appeal was sufficient to appeal the summary judgment, Reagan's claim that Garco failed to perfect its appeal under Rule 3(d) of the Utah Rules of Appellate Procedure necessarily fails. Reagan does not argue that it was in any way prejudiced by Garco's failure to particularly reference the summary judgment in its notice of appeal. Although Reagan suggests that it was not clear until the docketing statement was filed which May 1, 1998 order Garco was appealing, it is difficult to imagine that Reagan believed that Garco was appealing only the stipulated dismissal of Reagan's counterclaim.

this order. First, Garco argues the trial court incorrectly ruled that Reagan had not committed trespass by leaving the foundation to its sign on Garco's property. Second, Garco maintains the trial court erred by ruling that Reagan was not in unlawful detainer of Garco's property because it has refused to remove the foundation. Third, Garco contends the trial court erred by ruling that Reagan did not intentionally interfere with Garco's potential economic relations. Fourth and last, Garco argues the trial court erred in dismissing its claim for punitive damages.

¶ 30 "We review the trial court's grant of summary judgment for correctness, according no deference to the trial court's conclusions of law." *Potter v. Chadaz,* 977 P.2d 533, 535 (Utah Ct.App.1999). Additionally, "'we view the facts and inferences in the light most favorable to the non-moving party,' and affirm only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Id.* at 535–36 (quoting *Drysdale v. Ford Motor Co.,* 947 P.2d 678, 680 (Utah 1997) (citations omitted)) (alteration in original).

### 1. Trespass

¶ 31 Garco's first cause of action was for trespass. Garco claimed that after the lease expired on July 8, 1995, and Garco demanded removal, Reagan had to remove the entire sign, including the underground foundation. Garco maintains that Reagan's failure to do so constitutes a trespass.

¶ 32 The trial court made the following ruling regarding Garco's trespass claim:

The Court finds that there are no material factual disputes with respect to whether there was a lease between defendant and plaintiff's predecessor-in-interest. The undisputed evidence is that there was a lease between defendant and plaintiff's predecessor-in-interest. The face of the lease document itself does not require removal of the sign foundation of which plaintiff has complained. Nor does the face of the lease document require that the defendant restore the property to its former condi-

tion upon vacating the property. Therefore, as a matter of law, defendant did not and has not trespassed on plaintiff's property by leaving the sign foundation in place when defendant removed the sign face and poles from the plaintiff's property.

¶ 33 In support of its argument that the trial court erred in dismissing its trespass claim, Garco maintains that it is not bound by the lease between Reagan and Garco's predecessor-in-interest because (1) Garco did not have notice of the lease when it bought the property and (2) the lease is voidable for unconscionability and lack of consideration. We can summarily dispose of Garco's second argument regarding unconscionability and lack of consideration. This argument was not before the trial court until Garco's Reply Memorandum in support of its motion to revise. Accordingly, we will not address this argument in context of the trial court's summary judgment.[3] *Cf. State v. Amoroso,* 975 P.2d 505, 507 (Utah Ct.App. 1999) ("As a general rule, appellate courts will not consider an issue raised for the first time on appeal.").

¶ 34 Garco argues that, even though it made an inquiry, it did not have either record or actual notice of Reagan's lease. "The fact that ... a deed is not recorded or that recording is delayed 'does not affect the validity of a document with respect to the parties to the document and all other persons who have notice of the document.'" *Crowther v. Mower,* 876 P.2d 876, 879 (Utah Ct.App. 1994) (quoting Utah Code Ann. § 57–3–2(3)). Notice may be actual or constructive. *See Diversified Equities, Inc. v. American Sav. and Loan Ass'n,* 739 P.2d 1133, 1136 (Utah Ct.App.1987). Here, it is undisputed that Garco did not have actual knowledge of a written lease; thus our focus is on whether Garco had constructive notice of Reagan's lease.

¶ 35 Constructive notice can take two forms. First, pursuant to the recording statute, constructive notice is imparted when documents are properly recorded. Second, constructive notice arises from a duty to inquire when one has "knowledge of certain

---

3. We also note that Garco's unconscionability argument was stricken by the trial court.

facts and circumstances." *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 837–38 (Utah 1998). This second type of notice is referred to as inquiry notice. *See id.* at 837.

¶ 36 Because Reagan did not record its lease until two years after Garco purchased the property, we must determine whether Garco had inquiry notice. "[I]nquiry notice 'occur[s] when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part.' " *Id.* at 838 (citation omitted; second alteration in original). "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." *Id.* (citations and quotation marks omitted).

¶ 37 Garco concedes that it was under a duty to inquire as to the status of Reagan's relationship with Garco's predecessor-in-interest, but maintains that it "exercised good faith and reasonable care in inquiring into the status of [Reagan's] sign," which inquiry did not uncover the existence of the lease. Garco provided evidence that it asked Lamont, Garco's predecessor-in-interest, about Reagan's rental agreement. Garco claims it was told that Reagan was on a month-to-month oral rental arrangement. Garco also maintains that when Lamont gave all the files pertaining to the property to Garco, Reagan's written lease was not in those files.[4]

¶ 38 Notwithstanding, Garco has not claimed that it spoke with Reagan to determine whether Reagan possessed a written lease. A simple telephone call to Reagan could have confirmed or dispelled any question in this regard and would have led to Garco's learning of Reagan's interest. Thus, because Garco had "knowledge of certain facts [i.e., the sign's existence] and circumstances that [were] sufficient to give rise to a duty to inquire further," *id.*, we hold that Garco had constructive knowledge of Reagan's lease and, therefore, the lease was valid and binding upon Garco.

¶ 39 Because the lease is enforceable against Garco, we look to the terms of the lease to determine the duties of the parties. *See Cherry v. Utah State Univ.*, 966 P.2d 866, 869 (Utah Ct.App.1998) (" '[I]n interpreting a contract, we first look to the four corners of the agreement to determine the intent of the parties.' ") (citation omitted). Only if the lease is ambiguous will we look to extrinsic evidence to determine the parties' intent. *See id.* at 869–70. If extrinsic evidence fails to clarify the lease terms, then the document will be construed against the drafter. *See id.* at 870.

¶ 40 The trial court ruled that "[t]he face of the lease document itself does not require removal of the sign foundation of which plaintiff has complained. Nor does the face of the lease document require that the defendant restore the property to its former condition upon vacating the property." Because the lease did not contain a duty on Reagan's part to remove the foundation or restore the property to its original condition, the trial court held that Reagan was under no duty to do so. Thus, Garco's trespass claim was dismissed with prejudice.

¶ 41 The language of the lease neither explicitly nor implicitly addresses the parties' obligation or expectations regarding Reagan's duty to remove the sign's foundation. Nor does the lease require that Reagan restore the premises to its pre-leased condition. While Garco urges the court to imply such a requirement, "a court may not make a better contract for the parties than they have made for themselves; furthermore, a court may not enforce asserted rights not supported by the contract itself." *Ted R. Brown & Assocs., Inc. v. Carnes Corp.*, 753 P.2d 964, 970 (Utah Ct.App.1988). Additionally, " '[t]he lessee is not required to remove improvements made by him with the consent of the landlord, or under authority of the lease in the absence of express requirement thereof.' " *Arkansas Fuel Oil Co. v. Connellee*, 39 S.W.2d 99, 101 (Tex.Ct.App. 1931) (citation omitted).

Had the parties desired to contract that upon termination of the lease defendant

---

4. The record suggests, however, that Garco had in its possession an unsigned version of the lease.

would be required to remove all of its property and to restore the premises to their former condition, they could have done so, but here the only covenant touching removal of the property is the one giving lessee the right to remove if it so desires. An express agreement or covenant excludes the possibility of an implied one of a different or contradictory nature. *Duvanel v. Sinclair Refining Co.*, 170 Kan. 483, 227 P.2d 88, 92 (1951). "By the terms of this lease [Reagan] had the right to erect the improvements in question. It was under no duty to remove them, although it was granted the right and option to do so if it saw fit. [Garco] could not require removal." *Id.* We decline to impose such a duty upon Reagan when the lease does not.[5]

¶ 42 Because we hold that Reagan did not have a duty to remove the sign's founda-

tion, it could not be in trespass for refusing to do so. Accordingly, the trial court correctly dismissed Garco's trespass cause of action.

## 2. Unlawful Detainer

¶ 43 Garco argues the trial court erred by dismissing its unlawful detainer claim. In dismissing Garco's unlawful detainer cause of action, the trial court ruled:

2. The Court further finds that there are no material factual disputes as to whether [Reagan] returned possession of the property to [Garco] prior to [Garco's] service of a Notice to Quit. [Reagan] returned possession to [Garco] when [Reagan] completed removal of the sign faces and sign structure from [Garco's] property no later than June 19, 1995. [Garco's] Notice of

---

5. Garco relies on section 160 of the Restatement (Second) of Torts to support his argument that Reagan was under a legal duty to remove the foundation. Section 160 provides, in relevant part:

A trespass *may* be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest has placed on the land
(a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated....

Restatement (Second) of Torts § 160 (1965) (emphasis added).

Section 160 does not apply to the fact situation before us. The first comment on subsection (a), comment d, explains that "[i]f a structure ... is placed on land with the possessor's consent *conditioned upon the actor's subsequently removing it,* the termination of consent creates a duty to remove it from the land." Restatement (Second) of Torts § 160 cmt. d (1965) (emphasis added). The only exceptions to comment d are not relevant here. Thus, a tenant's duty to remove a structure at the end of a lease arises from the terms of the lease.

Notwithstanding, Garco would have us rely on comment g, which provides, in part:

*Mistaken belief that license is irrevocable.* Even though the actor or his transferor has not agreed to remove the structure ... from the land upon the termination of the license pursuant to which it was placed there, as where the parties act under a mistaken belief that the license is irrevocable, the termination of the license creates a situation in which the rule stated in this Section applies.

Restatement (Second) of Torts § 160 cmt. g (1965).

Any apparent inconsistency between comments d and g appears to be resolved by the title to comment g limiting that comment to situations when there is a "[m]istaken belief that [a] license is irrevocable." *Id.* (emphasis omitted). Thus, Garco's reliance on comment g is misplaced.

Garco also relies on section 158 of the Restatement (Second) of Torts (1965), section 12.2 of the Restatement (Second) of Property (1977), and section 81 of 25 Am.Jur.2d *Easements* (1996). However, section 158 requires a tenant to remove a structure only when the tenant is "under a duty" to do so. Restatement (Second) of Torts § 158(c) (1965). Reagan was under no duty to remove the sign or the foundation. Garco's section 12.2 analysis assumes there was no valid lease between Garco and Reagan. Having determined that a lease was in place and that it is inappropriate under the facts of this case for a court to impose rights and/or obligations on parties which are not supported by their contract, Garco's section 12.2 argument fails. Based on our holding that Reagan did not have a duty to remove the foundation, Garco's argument under section 81 of 25 Am.Jur.2d *Easements* that Reagan exceeded the scope of its easement is inapplicable on its face. *See* 25 Am.Jur.2d *Easements* § 81 (1996) ("The owner of an easement is said to have all rights incident or necessary to its proper enjoyment, but nothing more.... [I]f the easement owner exceeds his rights ... he becomes a trespasser....").

We also reject Garco's analysis regarding the issue of waste because it was not raised below. *See State v. Amoroso*, 975 P.2d 505, 507 (Utah Ct.App.1999) ("'[P]roper preservation requires that the parties 'bring the issue to the attention of the trial court, thus providing the court an opportunity to rule on the issue's merits.'" (quoting *Ohline Corp. v. Granite Mill*, 849 P.2d 602, 604 n. 1 (Utah Ct.App.1993) (citations omitted))).

Unlawful Detainer was served more than a year later, on July 29, 1996. As a matter of law, [Reagan] is not liable for unlawful detainer of the property, having returned possession of the property to [Garco] more than a year prior to [Garco's] Notice of Unlawful Detainer.

¶ 44 Garco argues that because Reagan left the sign's foundation in the ground, it is guilty of unlawful detainer. *See* Utah Code Ann. § 78–36–3 (1996).[6] Garco bases its argument on the premise that Reagan is under a duty to remove the sign's foundation, and until it does so, it is in unlawful possession of Garco's property. However, as we have held, Reagan is under no duty to remove the sign's foundation and is therefore not guilty of an unlawful detainer. Accordingly, we hold that the trial court correctly dismissed Garco's unlawful detainer cause of action.

### 3. Intentional Interference with Economic Relations

¶ 45 Garco contends the trial court erred in ruling that Reagan did not intentionally interfere with Garco's potential economic relations when it placed a sign less than five hundred feet from Garco's property. To succeed on a claim of intentional interference with potential economic relations, a "plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982). The trial court here ruled that Garco was unable to prove that Reagan either used an improper purpose or improper means in placing the new sign where it did. Thus, we focus on those elements of the *Leigh Furniture* test.

¶ 46 Improper purpose " 'is established by a showing that the actor's predominant purpose was to injure [the complaining party].' " *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 254 (Utah Ct.App.) (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991)) (alteration in original), *cert. denied*, 953 P.2d 449 (Utah 1997). To satisfy the improper purpose prong, the plaintiff must prove that "the defendant's ill will predominated over all legitimate economic motivations." *Pratt v. Prodata, Inc.*, 885 P.2d 786, 788 (Utah 1994). "In a case of mixed motives, a court must determine the defendant's predominant purpose underlying his conduct." *Sampson v. Richins*, 770 P.2d 998, 1003 (Utah Ct.App. 1989).

¶ 47 Here, the trial court made the following ruling on improper purpose:

[E]ven if the Court [assumes] that the plaintiff's purpose in locating the sign as it did on the n[e]ighboring property was to prevent plaintiff from erecting its own sign, there is no evidence that any injury to plaintiff occasioned by defendant's move of the sign to the neighboring property was an end in and of itself, designed to harm plaintiff merely for the sake of injury alone. Instead, the defendant's move of the sign to its present location constituted legitimate competitive activity, consistent with an effort by defendant to achieve the long-range economic goal of maximizing its profits from its outdoor advertising signs in the area by forestalling competitive activity on the plaintiff's property.

¶ 48 We agree with the trial court's conclusion that Garco cannot establish improper purpose on the part of Reagan. In support of its argument, Garco notes two conversa-

---

6. Section 78–36–3 provides in pertinent part:
(1) A tenant of real property, for a term less than life, is guilty of an unlawful detainer:
(a) when he continues in possession ... of the property or any part of it, after the expiration of the specified term or period for which it is let to him, which specified term or period, whether established by express or implied contract, or whether written or parol, shall be terminated without notice at the expiration of the specified term or period;

(b) when, having leased real property for an indefinite time with monthly or other periodic rent reserved:
....
(ii) in cases of tenancies at will, where he remains in possession of the premises after the expiration of a notice of not less than five days....
Utah Code Ann. § 78–36–3 (1996).

tions with Reagan in which Reagan told Garco that it strategically placed the sign where it did "for the sole purpose to prevent Garco from doing business." Viewing the facts and inferences in the light most favorable to Garco, as we must do when reviewing summary judgment, *see Potter,* 977 P.2d at 535, we cannot say that Reagan's strategy was anything other than "legitimate economic motivations," *Pratt,* 885 P.2d at 788, in that it limited competition. Reagan did exactly what Garco sought to do: contracted to erect a sign. Reagan simply acted before Garco. Thus, Garco is unable to show that Reagan's predominant purpose behind erecting the sign where it did was the result of ill will toward Garco. *See id.*

■■■ ¶ 49 As earlier case law has noted, problems arise in a commercial context when trying to prove improper purpose because of the presence of legitimate competition. *See Pratt,* 885 P.2d at 789 n. 3; *Leigh Furniture,* 657 P.2d at 307. Thus, in commercial settings, it has been suggested that the court look more at the improper means prong of the test set out in *Leigh Furniture. See Leigh Furniture,* 657 P.2d at 307 ("Problems inherent in proving motivation or purpose make it prudent for commercial conduct to be regulated for the most part by the improper means alternative, which typically requires only a showing of particular conduct."). "An 'improper means' is shown when the plaintiff proves that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated ' "an established standard of a trade or profession." ' " *Pratt,* 885 P.2d at 788 (quoting *Leigh Furniture,* 657 P.2d at 308 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,* 283 Or. 201, 582 P.2d 1365, 1371 & n. 11 (1978))).

¶ 50 The trial court here made the following ruling regarding improper means:

> [T]he Court notes that it is undisputed that after lengthy lease negotiations between plaintiff and defendant, on February 23, 1995, plaintiff advised defendant that it had "elected to pursue other options" and demanded that defendant immediately remove the sign. Defendant contracted with the neighboring property owner on April

20, 1995, and applied to UDOT to move the sign shortly thereafter. There is no evidence that plaintiff took any substantial steps during that interim period to attempt to secure its own permit for a competing sign. Nor is there any evidence before the Court that the defendant's R–407 permit was improperly granted or that the defendant's two signs being erected at the same time for some three weeks caused any injury to plaintiff. Therefore, there is no evidence that defendant acted by improper means in moving its sign to the neighboring property or that the defendant's act in moving the sign was the cause of plaintiff's inability to procure its own permit.

■■■ ¶ 51 Garco argues that this ruling was in error because of the existence of different sign permits on different signs. However, the fact that Reagan may have had the wrong permit on the wrong sign and may have violated the Utah Outdoor Advertising Act does not show that Reagan used improper means to intentionally interfere with Garco's potential economic relations. Garco also contends that the fact that Reagan was in trespass or unlawful detainer by not removing the sign's foundation shows improper means. Because we have held that Reagan was not under a duty to remove the foundation, and was therefore not in trespass or unlawful detainer, Garco's argument fails. Lastly, Garco argues that Reagan's placement of its sign violates the Utah Antitrust Act. *See* Utah Code Ann. §§ 76–10–911 to – 926 (1995 & Supp.1999). Notwithstanding, Garco's general statement that the trial court's finding that Reagan placed its sign for the purpose of "forestalling competitive activity" supports a violation of the Utah Antitrust Act is insufficient to persuade this court that a violation occurred. Therefore, we reject this argument based on the lack of analysis. *See* Utah R.App. P. 24(a)(9).

¶ 52 We accordingly hold that the trial court did not err in ruling that Garco was unable to show improper means on the part of Reagan. Because Garco was unable to show either improper purpose or improper means, the trial court correctly dismissed Garco's claim for intentional interference with potential economic relations.

### 4. Punitive Damages

¶ 53 Because all Garco's underlying substantive claims were dismissed, the trial court correctly dismissed Garco's claim for punitive damages.

### C. *Motion to Revise*

¶ 54 Garco challenges the trial court's denial of its motion to revise, brought pursuant to Rule 54(b) of the Utah Rules of Civil Procedure. Rule 54(b) provides, in pertinent part:

> *Judgment upon multiple claims* . . . . When more than one claim for relief is presented in an action, whether as a claim, [or] counterclaim . . ., the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon [1] an express determination by the court that there is no just reason for delay and [2] upon an express direction for the entry of judgment. *In the absence of such determination [that the judgment is final] and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities . . . shall not terminate the action as to any of the claims . . . and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims* and the rights and liabilities of all the parties.

Utah R. Civ. P. 54(b) (second emphasis added); *accord Kennedy v. New Era Indus., Inc.,* 600 P.2d 534, 536–37 (Utah 1979).

¶ 55 We have interpreted Rule 54(b) to allow "a [trial] court to change its position with respect to any order or decision before a final judgment has been rendered in the case." *Trembly v. Mrs. Fields Cookies,* 884 P.2d 1306, 1310 n. 2 (Utah Ct.App.1994); *accord Timm v. Dewsnup,* 851 P.2d 1178, 1184–85 (Utah 1993) (permitting reconsideration of summary judgment under Rule 54(b) and holding summary judgment did not fully

---

7. Garco's appellate brief fails to substantively present and analyze this issue. Because of this deficiency we may decline to address this argument for failure to comply with appellate briefing requirements. *See State v. Thomas,* 974 P.2d 269, 272 (Utah 1999). However, Garco's reply brief adequately addresses the issue. While we do not examine issues argued for the first time in

---

dispose of case when part of counterclaim remained in trial court, and was thus subject to revision); *Kennedy,* 600 P.2d at 536–37; *Salt Lake City Corp. v. James Constructors, Inc.,* 761 P.2d 42, 44 n. 5 (Utah Ct.App.1988) (stating "Rule 54(b) allows courts to readjust prior rulings in . . . cases . . . unless those rulings disposed of entire claims or parties *and* those rulings were specifically certified as final").

¶ 56 Garco's motion to revise was properly before the trial court pursuant to Rule 54(b). Because a final judgment had not yet been rendered disposing of all of the parties' claims (i.e., Reagan's counterclaim was outstanding), the court had the power to revise its summary judgment order under Rule 54(b). *See, e.g., Don Houston, M.D., Inc. v. Intermountain Health Care, Inc.,* 933 P.2d 403, 406 (Utah Ct.App.1997) (providing "judgment is not a final, appealable order if it does not dispose of all the claims in a case, including counterclaims").

¶ 57 We next examine whether the court properly denied Garco's motion to revise. "A trial court's decision to grant or deny a motion to reconsider summary judgment is within the discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion." *Timm v. Dewsnup,* 921 P.2d 1381, 1386 (Utah 1996) (emphasis omitted); *accord Trembly,* 884 P.2d at 1312.[7]

¶ 58 As previously stated, "a motion under Rule 54(b) is a proper vehicle to ask the court to reconsider its prior [ruling on] a motion for summary judgment." *Trembly,* 884 P.2d at 1311. However, a litigant seeking revision and reversal must demonstrate a reason for the request. *See id.* For instance, a litigant may show that:

> (1) the matter is presented in a "different light" or under "different circumstances;"

---

a reply brief, *see Sorenson v. Kennecott–Utah Copper Corp.,* 873 P.2d 1141, 1143 n. 2 (Utah Ct.App.1994) (refusing to examine issue argued only in reply brief because opponent had no opportunity to respond), in this instance the issue was raised in the initial brief, thereby avoiding total surprise to appellee, and developed adequately for our review.

(2) there has been a change in the governing law; (3) a party offers new evidence; (4) "manifest injustice" will result if the court does not reconsider the prior ruling; (5) a court needs to correct its own errors; or (6) an issue was inadequately briefed when first contemplated by the court.

*Id.* (citation omitted). Here, Garco argues the trial court erred in denying its motion to revise because it properly presented matters in a "different light" and presented "new evidence." [8]

¶ 59  First, Garco argues the court abused its discretion in denying its motion to reconsider because it offered "new evidence." Specifically, Garco claims that "commentary during oral argument" brought to the trial court's attention "new evidence" it had not seen at the time of its ruling. However, without reference to the record by Garco we do not know and will not guess the "commentary" or "new evidence" to which Garco refers.[9]

¶ 60  Second, Garco contends the court abused its discretion in denying its motion to revise because it "presented matters in a different light." Specifically, it argues that matters it argued in its cross-motion for partial summary judgment put matters in "a different light." However, we agree with the trial court that Garco's motion to revise does not present matters in a different light, but merely "rehash[es] arguments already fully considered" in the court's summary judgment ruling. For instance, Garco has failed to demonstrate that newly discovered or additional evidence was adduced *after* the summary judgment ruling or that material facts had changed. *See Sittner v. Big Horn Tar Sands & Oil, Inc.,* 692 P.2d 735, 736 (Utah 1984). Rather, Garco filed its cross-motion for partial summary judgment *before* the court dismissed Garco's complaint.

¶ 61  We therefore hold that the trial court did not abuse its discretion in denying Garco's motion to revise.

### D.  *Motion to Strike*

¶ 62  Relying on *State v. Phathammavong,* 860 P.2d 1001 (Utah Ct.App.1993), the trial court struck several portions of Garco's reply memorandum in support of its motion to revise because they were not previously raised in Garco's initial memorandum and did not rebut matters raised in Reagan's opposing brief. Garco challenges this ruling.

¶ 63  A trial court may grant a motion to strike issues raised for the first time in a reply memorandum. *See id.* at 1003–04. To allow a party to raise new issues in its rebuttal materials is improper because it precludes the other party the opportunity to respond. *See id.* As we indicated in *Phathammavong,* a reply memorandum is limited to rebutting matters raised in the memorandum opposing the motion. *See id.* at 1004 & n. 6.

¶ 64  Garco argues that its reply memorandum rebutted new matters set forth in Reagan's opposing brief. However, after carefully reviewing the parties' memoranda, we agree with the trial court that the arguments raised in Garco's reply memorandum are new and did not answer matters raised in Reagan's memorandum. Therefore, we hold that the trial court did not err in granting Reagan's motion to strike.

### CONCLUSION

¶ 65  In summary, we affirm the trial court's order dismissing Garco's complaint in its entirety, the trial court's order denying Garco's motion for revision, and granting

---

**8.** Garco mentions in passing, but presents no meaningful argument regarding a claim that it "more fully briefed issues raised earlier," and "showed why the trial court should have corrected its own errors." As such, we do not address these issues further.

**9.** Even if we assume the "new evidence" to which Garco refers is the affidavits supporting its cross-motion for partial summary judgment, these affidavits were before the court when it ruled on Reagan's summary judgment motion, as Garco candidly admits in its brief. As such, the affidavits do not qualify as newly discovered evidence sufficient to require the court to reconsider its prior decision.

Reagan's motion to strike portions of Garco's reply memorandum.

¶ 66    Affirmed.

¶ 67    I CONCUR: JUDITH M. BILLINGS, Judge.

WILKINS, Presiding Judge (concurring in part and dissenting in part):

¶ 68    I concur in the result reached by the majority, affirming the action of the trial court. However, I respectfully dissent with respect to the opinion expressed by the majority regarding this court's ability to review the December 29, 1997 summary judgment against Garco by which its entire complaint against Reagan was dismissed.

¶ 69    Rule 3(d) of the Utah Rules of Appellate Procedure requires that a notice of appeal "designate the judgment or order, or part thereof, appealed from." As we said in *M.L. & S.L. v. V.H. (In re Baby Boy Doe)*, 894 P.2d 1285 (Utah Ct.App.1995), "the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a *specific* judgment in a particular case." *Id.* at 1286 n. 1 (emphasis in original); *see also Nunley v. Stan Katz Real Estate, Inc.*, 15 Utah 2d 126, 128, 388 P.2d 798, 800 (1964) (holding that "[r]espondent is entitled to know specifically which judgment is being appealed"). When a party does not refer to an order in its notice of appeal, we are without jurisdiction to hear an appeal of the order.

¶ 70    In this instance, Garco filed a notice of appeal that referenced only "the final order of the Honorable William B. Bohling entered in this matter on May 1, 1998." In fact, two orders were entered by the trial court dated May 1, 1998. One order denied Garco's Rule 54(b) motion to reconsider the judgment against Garco entered on December 29, 1997. That order also granted Reagan's motion to strike several potions of Garco's reply memorandum submitted in support of the 54(b) motion. The second order of

May 1 dismissed Reagan's counterclaim. On appeal, Garco raises no issue regarding dismissal of Reagan's counterclaim.

¶ 71    As accurately stated by the majority, "*Kennecott, Zions,* and *Jensen* clearly and unambiguously stand for the proposition that a party who seeks to appeal a non-final summary judgment need not specifically identify that summary judgment in the notice of appeal, but need only identify a final judgment that relates to that summary judgment." In all three cases relied upon by the majority, the summary judgment sought to be challenged on appeal was followed by a trial, a verdict, and a final judgment which incorporated the consequences of the earlier, preliminary order. Garco's appeal is different.

¶ 72    The problem with Garco's notice of appeal is that neither of the orders entered on May 1, 1998 were final *judgments*. Both were *post*-judgment orders that had the effect of making the summary judgment of December 29, 1997 final and appealable. The May 1 order that Garco and the majority hang their collective hat on is not even the one that made the earlier summary judgment final. They rely on the order denying the post-judgment Rule 54(b) relief.

¶ 73    At the time Garco appealed the May 1, 1998 order relating to the post-judgment 54(b) motion, Garco could have appealed the December 29, 1997 judgment. It did not.[1]

¶ 74    The purpose of the notice of appeal is to give notice of the pending appeal not only to the court, but also to the appellee. During the fourteen days following the filing of the notice of appeal, the appellee has the right to file its own notice of cross-appeal. If the appellant does not give notice of issues it plans to pursue on appeal in the notice of appeal, the appellee has the right to assume that those issues have been waived, and will play no part in the appeal. Had Garco specifically identified the December 29th order in its notice of appeal, giving Reagan the

---

1.    Twenty-one days after filing the defective notice of appeal, Garco filed its docketing statement with this court as required by Rule 9 of the Rules of Appellate Procedure. In the docketing statement, for the first time, Garco identified both the May 1, 1998 order *and* the December 29, 1997 judgment under the heading of "Date of entry of judgment or order appealed from." It also correctly identified the 54(b) motion that led to the May 1 order under the heading of "Post Judgment Motion."

required notice of what it intended to contest on appeal, we would have had jurisdiction to consider those claims. However, because Garco failed to identify the December 29th order in its notice of appeal, we have no jurisdiction to address those questions.

¶ 75  It follows that if this court lacks jurisdiction to consider the issues raised by Garco relating directly to the December 29th summary judgment, I dissent from both sections A. and B. of the majority's analysis. As I have said, I reach the opposite result in section A., namely that we do not have jurisdiction to consider the claims. Consequently, I would neither reach nor address the issues reached by the majority in section B.

¶ 76  I concur in the result reached in section C. and with the analysis except to the degree that the majority suggests that the May 1st order on the post-judgment Rule 54(b) motion is a final judgment in this case.

¶ 77  I fully concur with the majority's analysis and result in section D. regarding the motion to strike.